Arthur Liou (SBN 252690)
Julia Lum (SBN 310291)
Danica Li (SBN 308650)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
aliou@leonardcarder.com
jlum@leonardcarder.com
dli@leonardcarder.com

Attorneys for Defendant
UPTE-CWA Local 9119

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC WOLF, | Case No. 3:19-cv-02881-WHA |
| Plaintiff, | |
| v. | **DEFENDANT UPTE'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (FED. R. CIV. P. 12(B)(1), (6)), AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT** |
| UNIVERSITY PROFESSIONAL & TECHNICAL EMPLOYEES, COMMUNICATIONS WORKERS OF AMERICA LOCAL 9119; JANET NAPOLITANO, in her official capacity as President of the University of California; JOSHUA GOLKA, in his official capacity as Executive Director of the California Public Employment Relations Board; and XAVIER BECERRA, in his official capacity as Attorney General of California, | |
| Defendants. | Date: September 26, 2019<br>Time: 8:00am<br>Courtroom: 12<br>Judge: Hon. William Alsup<br><br>Action Filed: May 24, 2019 |

# TABLE OF CONTENTS

NOTICE OF MOTION AND MOTION TO DISMISS .................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................................1

I.      INTRODUCTION ...............................................................................................................1

II.     BACKGROUND ................................................................................................................3

III.    LEGAL STANDARD .......................................................................................................5

IV.     ARGUMENT ......................................................................................................................6

        A.      Wolf's claims for declaratory relief are moot ...................................................6

        B.      Wolf voluntarily agreed to become an UPTE member and to pay a service
                fee even if he resigned his union membership ..................................................7

                1.      Wolf voluntarily and affirmatively agreed to pay a service fee if he
                        resigned his union membership ..........................................................8

                2.      The First Amendment does not permit Wolf to breach his contractual
                        obligations ...........................................................................................10

                3.      *Janus* does not change the binding nature of Wolf's contractual
                        obligation .............................................................................................11

                4.      Even if a constitutional "waiver" analysis applied, Wolf waived his
                        rights by voluntarily signing the membership agreement ...............13

        C.      Wolf's membership agreement with UPTE is not state action under 42
                U.S.C. § 1983 .........................................................................................................14

                1.      Wolf's claimed constitutional deprivation did not result from the
                        exercise of a right or privilege created by the state .......................15

                2.      UPTE is not a state actor under § 1983 ...........................................16

                        a.      The public function test does not apply .............................16

                        b.      The joint action test does not apply ..................................17

                        c.      The state compulsion test does not apply ..........................18

                        d.      The government nexus test does not apply .........................18

        D.      Wolf does not plead, and UPTE does not have, a "maintenance of
                membership" provision in its collective bargaining agreement ....................19

V.      CONCLUSION ................................................................................................................20

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

**Federal Cases**

*Abood v. Detroit Bd. of Ed.*,
  431 U.S. 209 (1977) ........................................................................... 16

*Alaska Fish & Wildlife Fed'n v. Dunkle*,
  829 F.2d 933 (9th Cir. 1987) ............................................................... 7

*Am. Rivers v. Nat'l Marine Fisheries*,
  126 F.3d 1118 (9th Cir. 1997) .......................................................... 6, 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ............................................................................. 5

*Augustine v. United States*,
  704 F.2d 1074 (9th Cir. 1983) ............................................................. 5

*Babb v. Cal. Teachers Ass'n*,
  378 F. Supp. 3d 857 (C.D. Cal. 2019) .............................................. 6, 7

*Bain v. California Teachers Ass'n*,
  156 F. Supp. 3d 1142 (C.D. Cal. 2015) ................................... 16, 17, 18

*Belgau v. Inslee*,
  No. 18-5620 RJB, 2018 WL 4931602 (W.D. Wash. Oct. 11, 2018) ........ 8, 11

*Belgau v. Inslee*,
  359 F. Supp. 3d 1000 (W.D. Wash. 2019) ......................................... 15

*Bermudez v. Serv. Employees Int'l Union, Local 521*,
  No. 18-cv-04312-VC, 2019 WL 1615414 (N.D. Cal. Apr. 16, 2019) ......... 9

*Boy Scouts of Am. v. Dale*,
  530 U.S. 640 (2000) ........................................................................... 12

*Brady v. United States*,
  397 U.S. 742 (1970) ........................................................................... 14

Caviness v. Horizon Cmty. Learning Ctr., Inc.,
  590 F.3d 806 (9th Cir. 2010) .................................................. 15, 16, 18

*Circuit City Stores, Inc. v. Ahmed*,
  283 F.3 1198 (9th Cir. 2002) ............................................................. 13

*Cohen v. Cowles Media Co.*,
  501 U.S. 663 (1991) ................................................................. 2, 10, 14

*Colonie Fiber Co. v. NLRB*,
  163 F.2d 65 (2d Cir. 1947) ................................................................ 19

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

*Coltec Industries Inc. v. Hobgood*,
    280 F.3d 262 (3rd Cir. 2002) ............................................................... 12, 14

*Conn. State Fed'n of Teachers v. Bd. of Educ. Members*,
    538 F.2d 471 (2d Cir.1976) ......................................................................... 12

*Cooley v. California Statewide Law Enf't Ass'n*,
    No. 2:18-cv-02961-JAM-AC, 2019 WL 331170 (E.D. Cal. Jan. 25, 2019) ................ 9

*Crockett v. NEA-Alaska*,
    367 F. Supp. 3d 996 (D. Alaska 2019) ........................................... 11, 12, 14

*Fisk v. Inslee*,
    No. C16-5889RBL, 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017) ........... 8, 9, 10, 11

*Florer v. Congregation Pidyon Shevuyim, N.A.*,
    639 F.3d 916 (9th Cir. 2011) ............................................................... 15, 16

*Franklin v. Fox*,
    312 F.3d 423 (9th Cir. 2002) ............................................................... 16, 17

*Gibson v. United States*,
    781 F.2d 1334 (9th Cir. 1986) .................................................................. 14

*Horwath v. NLRB*,
    539 F.2d 1093 (7th Cir. 1976) .................................................................. 19

*Janus v. AFSCME Council 31*,
    138 S. Ct. 2448 (2018) ...................................................................... passim

*Kirtley v. Rainey*,
    326 F.3d 1088 (9th Cir. 2003) .................................................................. 16

*Kokkonen v. Guardian Life Ins. Co. of America*,
    511 US 375 (1994) .................................................................................. 5

*Lopez v. Dep't of Health Servs.*,
    939 F.2d 881 (9th Cir.1991) ..................................................................... 18

*Lugar v. Edmondson Oil Co.*,
    457 U.S. 922 (1982) ............................................................................... 15

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
    540 F.3d 1049 (9th Cir. 2008) .................................................................... 5

*NLRB v. U.S. Postal Service*,
    827 F.2d 548 (9th Cir. 1987). .................................................................... 9

*Naoko Ohno v. Yuko Yasuma*,
    723 F.3d 984 (9th Cir. 2013) ..................................................... 15, 16, 17, 18

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

*O'Callaghan v. Regents of the Univ. of California*,
   No. CV 19-02289JVS(DFMx), 2019 WL 2635585 (C.D. Cal. June 10, 2019) ...................... 8, 11

*Price v. State of Hawaii*,
   939 F.2d 702 (9th Cir. 1991) ................................................................................................ 15

*Pub. Util. Comm'n v. Fed. Energy Regulatory Comm'n*,
   100 F.3d 1451 (9th Cir. 1996) ................................................................................................. 7

*Roberts v. U.S. Jaycees*,
   468 U.S. 609 (1984) ............................................................................................................... 12

*Rosebrock v. Mathis*,
   745 F.3d 963 (9th Cir. 2014) .................................................................................................... 6

*Smith v. Bieker*,
   No. 18-cv-05472-VC, 2019 WL 2476679 (N.D. Cal. June 13, 2019) .................................... 6, 7

*Smith v. Superior Ct., Cty. of Contra Costa*,
   No. 18-cv-05472-VC, 2018 WL 6072806 (N.D. Cal. Nov. 16, 2018) .............................. 7, 8, 12

*Stac Elecs. Sec. Litig.*,
   89 F.3d 1399 (9th Cir. 1996) .................................................................................................... 5

*Sze v. INS*,
   153 F.3d 1005 (9th Cir. 1998) .................................................................................................. 7

*Thomas v. Collins*,
   323 U.S. 516 (1945) ............................................................................................................... 12

*United States v. Ritchie*,
   342 F.3d 903 (9th Cir. 2003) ............................................................................................... 2, 5

*Wood v. City of San Diego*,
   678 F.3d 1075 (9th Cir. 2012) .................................................................................................. 5

**State Cases**

*Perricone v. Perricone*,
   972 A.2d 666, 682 (Conn. 2009) ............................................................................................ 14

**Federal Statutes**

39 U.S.C. § 1205 ........................................................................................................................... 9

29 U.S.C. § 186 ............................................................................................................................. 9

42 U.S.C. § 1983 ................................................................................................................... 1, 2, 14

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

**Federal Rules**

Fed. R. Civ. P. 12 ........................................................................................ 2, 5

**Other Authorities**

Cal. Gov't Code § 1157.12 (West 2019) ................................................... 18

Cal. Gov't Code 3513 (West 2019) .......................................................... 19

Cal. Gov't Code § 3571 (West 2019) ........................................................ 18

Cal. Gov't Code § 3583 (West 2019) ...................................... 2, 3, 16, 19, 20

Cal. Gov't Code § 3583.5 (West 2019) ...................................................... 20

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## NOTICE OF MOTION AND MOTION TO DISMISS

PLEASE TAKE NOTICE that on September 26, 2019 at 8:00am, or as soon thereafter as the matter can be heard in Courtroom 12 of the 19th Floor of the United States District Court, located at 450 Golden Gate Avenue, San Francisco, CA 94102, the Honorable William Alsup presiding, Defendant University Professional and Technical Employees, Communication Workers of America Local 9119 (UPTE) will move the court for an order dismissing Plaintiff Isaac Wolf's First Amended Complaint (FAC) pursuant to Rule 12(b)(1) and (6) of the Federal Rules of Civil Procedure.

This motion seeks an order dismissing Wolf's Complaint, on the grounds that the court lacks subject-matter jurisdiction and that the FAC fails to state claims upon which relief may be granted. Among other things, Plaintiff has no claim under the First Amendment against UPTE because he voluntarily and explicitly agreed to become a member of UPTE and committed to financially contributing to the union for a fixed period of time.

This motion is based upon this Notice of Motion and Motion, and Memorandum of Points and Authorities in Support, the Declaration of Arthur Liou, the Request for Judicial Notice and accompanying exhibit, all pleadings and papers on file in this action, and upon such other matters as may be presented to the court at the time of the hearing.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.      INTRODUCTION

This case concerns a single plaintiff, Isaac Wolf, who voluntarily agreed to become a member of his union, University Professional and Technical Employees, Communication Workers of America Local 9119 (UPTE), and to pay union dues. When Wolf asked to cancel his deductions during the window period specified in his membership agreement, UPTE notified his employer, the University of California (UC or the "University"), and UC stopped the deductions. FAC ¶¶ 20-23, ECF No. 39. Nevertheless, Wolf has filed suit under 42 U.S.C. § 1983 alleging that withholding union dues pursuant to his signed agreement violated his First Amendment rights.

The membership agreement Wolf signed was explicit that he was agreeing to pay union dues "in return for the privilege of UPTE membership and the long-term benefit of union

representation," and Wolf acknowledged that "both union members and nonmembers benefit from representation and should contribute."[1] Declaration of Arthur Liou (Liou Decl.), Exh. A. Additionally, by signing the membership agreement, Wolf committed to paying union dues or an equivalent service fee on an annually renewing basis, even if "the law no longer requires nonmembers to pay a fair share fee"—that is, even after a change in the law like that enacted by *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). Liou Decl., Exh. A. Because Wolf voluntarily and explicitly agreed to become a member of UPTE, and committed to financially contributing for a fixed period of time, he has no claim against the union, particularly since deductions were cancelled in accordance with the membership agreement.

In particular, there are four reasons Wolf's claims should be dismissed.

First, Counts I and II, seeking declaratory relief that (1) Wolf had a First Amendment right to end deductions at any time and that (2) California Government Code section 3583, which authorizes contractual "maintenance of membership," unconstitutionally prohibited immediate cancellation of deductions, are both moot. Wolf admits that UC stopped all deductions in February 2019, so the court cannot grant the prospective relief Wolf seeks, and there is no risk that Wolf will be subject to dues deductions again.

Second, the deductions were made according to the explicit terms of Wolf's membership agreement, which he voluntarily signed. The authorization form is a binding agreement, and "the First Amendment does not confer . . . a constitutional right to disregard promises that would otherwise be enforced under state law." *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991). Since *Janus*, numerous district courts have found no First Amendment violation when union members are held to the terms of voluntarily executed membership agreements. So too here, requiring Wolf to abide by UPTE's membership terms does not violate his rights.

Third, there is no state action for purposes of § 1983, because Wolf does not and cannot plausibly allege that a state policy or action by the state compelled him to sign an UPTE

---

[1] Although Wolf did not attach his signed UPTE membership agreement to the FAC, it is incorporated by reference into the FAC. UPTE has attached the agreement as Exhibit A to the Declaration of Arthur Liou filed with this motion. FAC ¶ 13; *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (defendant can offer document incorporated by reference into complaint, and court can treat as part of the complaint for purposes of a Fed. R. Civ. P. 12(b)(6) motion).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

membership agreement, nor can he show that UPTE is a state actor under § 1983. Put slightly differently, the real injury Wolf complains about is his decision to voluntarily join UPTE and agree to its membership terms. Even though he is a public employee, that does not transform adherence to this contractual obligation into a constitutional tort.

Finally, Wolf's claim for declaratory relief against California Government Code section 3583 in Count II also fails because UPTE does not have a "maintenance of membership" provision in its collective bargaining agreement with UC. Wolf does not and cannot plead that such a provision exists or was ever applied to him, and he therefore has no standing to challenge section 3583.

## II.    BACKGROUND

Isaac Wolf, a process engineer at the Lawrence Berkeley National Laboratory ("LBNL"), is an employee of the University of California. FAC ¶ 5. He began working at LBNL in March 2018. *Id.* at ¶ 12.

Wolf's position is part of the Research Support Professional bargaining unit at UC, and UPTE is the exclusive bargaining representative for this unit. Request for Judicial Notice ("RJN"), p. 1. UPTE and UC are parties to a collective bargaining agreement ("CBA") with a term of December 20, 2013 to October 31, 2017. RJN, Exh. A. The CBA had already expired when Wolf started working for UC, and it does not include a "maintenance of membership" provision. *See id.*[2]

On April 10, 2018, Wolf voluntarily chose to become a member of UPTE and signed a written contract affirmatively authorizing the deduction of union dues from his wages for a one-year period, and from year-to-year thereafter. Liou Decl., Exh. A. The agreement states that Wolf "authoriz[ed]" and "enter[ed] into this [membership] agreement in return for the privileges of UPTE membership and the long-term benefit of union representation." *Id.* In pertinent part, the agreement provided:

///

///

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

---

[2] UPTE's Request for Judicial Notice attaches as Exhibit A Article 28 of the CBA, which is the only CBA article that concerns dues and fees deduction requirements. The complete agreement is available at https://ucnet.universityofcalifornia.edu/labor/bargaining-units/rx/contract.html.

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

> I apply to become a member of UPTE. I enter into this agreement in return for the privileges of UPTE membership and the long-term benefit of union representation. I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE. I can end my membership by following instructions in my union contract (found at www.upte-cwa.org), or as otherwise allowed by law. I understand that both union members and nonmembers benefit from representation and should contribute. If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues. I direct UC to deduct this service fee from my monthly pay and to transfer that money to UPTE. I understand that this voluntary service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

*Id.* Pursuant to this express authorization, UC deducted UPTE union dues, or an equivalent voluntary service fee, from Wolf's pay and sent them to UPTE. FAC ¶¶ 13, 24.

Wolf does not allege that he was required by UPTE, LBNL, or UC to become a union member or to sign the April 10, 2018 authorization form as a condition of employment. Nor does he allege that any of these entities otherwise forced him to join UPTE, sign a membership agreement, or authorize deductions from his wages. *See id.* at ¶¶ 13-14, 28.

On November 2, 2018, Wolf emailed UPTE requesting to resign his membership and requesting that UPTE cease deducting all dues from his wages. *See id.* at ¶ 15. According to Wolf, UPTE responded by letter informing him that he could cancel deductions only during his "annual cancellation period" prior to his renewal date. *See id.* at ¶ 17. Under the terms of Wolf's membership agreement, his 30-day cancellation window ran from January 25, 2019 through February 24, 2019. *See* Liou Decl., Exh. A.

Wolf later contacted UPTE during his cancellation window, on January 30, 2019, by emailing UPTE a letter resigning his membership and requesting that payroll deductions end. FAC ¶ 20.

After receiving the request during the cancellation period, on February 12, 2019, UPTE sent an email to LBNL requesting that it stop deductions for Wolf. *Id.* at ¶ 21. Shortly thereafter, on

February 14, LBNL confirmed that deductions had stopped. *Id.* at ¶ 22.

Thus, within approximately two weeks of Wolf's January 2019 request, UPTE had notified the University of the cancellation, and UC had stopped deductions from Wolf's paycheck. *Id.* at ¶¶ 20-23. Altogether, Wolf alleges that he had approximately $65 per month withheld from his paycheck for the period from April 2018 until February 2019. *Id.* at ¶ 24.

**III.    LEGAL STANDARD**

This motion is brought pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6). A complaint will be dismissed under Rule 12(b)(1) if the court lacks subject matter jurisdiction over the matter. Under Rule 12(b)(1), a court may consider "evidence regarding jurisdiction," and the moving party should prevail "if the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Augustine v. United States*, 704 F.2d 1074, 1077 (9th Cir. 1983). Plaintiff bears the burden of establishing federal subject matter jurisdiction, with the court presuming lack of jurisdiction until the plaintiff proves otherwise. *Kokkonen v. Guardian Life Ins. Co. of America*, 511 US 375, 376-378 (1994). Furthermore, a court may dismiss a complaint for lack of subject matter jurisdiction at any time. *See* Fed. R. Civ. P. 12(h)(3); *Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012).

A complaint must also be dismissed under Rule 12(b)(6) if the complaint does not "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* When reviewing a motion to dismiss, the Court may take into account not only the allegations on the face of the complaint itself, but also "materials incorporated into the complaint by reference, and matters of which the court may take judicial notice." *Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008); *Ritchie*, 342 F.3d at 908. The complaint's allegations of material fact are taken as true, but "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *In re Stac Elecs. Sec. Litig.*, 89 F.3d 1399, 1403 (9th Cir. 1996).

///

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

## IV.     ARGUMENT

### A.     Wolf's claims for declaratory relief are moot

Wolf asserts two claims for prospective declaratory relief, both of which must be dismissed because they do not present a live controversy. First, he seeks a declaration that preventing him from cancelling his deductions immediately violates his First Amendment rights. FAC ¶¶ 25-33. Second, he seeks a declaration that California Government Code section 3583 and "all related provisions" violate the First Amendment, because they prevent immediate cessation of dues deductions. FAC ¶¶ 34-37. Given that Wolf's deductions were cancelled in February 2019 and there is no risk they will resume, both these claims must be dismissed as moot.

A claim is moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) (quotation marks and citations omitted). "If an event occurs that prevents the court from granting effective relief, the claim is moot and must be dismissed." *Am. Rivers v. Nat'l Marine Fisheries*, 126 F.3d 1118, 1123 (9th Cir. 1997)

In this case, Wolf acknowledges that once he contacted UPTE during the cancellation period, UPTE asked UC to cancel deductions. By approximately February 14, 2019—more than three months before he filed his initial complaint—all deductions from Wolf's paycheck had stopped. It is therefore impossible for this court to grant any effective prospective relief to Wolf on Counts I and II.

This is consistent with decisions issued by multiple district courts, including this one. Since *Janus*, federal courts have dealt with multiple lawsuits brought by public sector union members claiming they have a First Amendment right to end dues deductions at any time. The courts have repeatedly held that these claims are moot once deductions are stopped pursuant to the membership agreements. *See, e.g.*, *Smith v. Bieker*, No. 18-cv-05472-VC, 2019 WL 2476679, at *1 (N.D. Cal. June 13, 2019) (*Smith II*) (because dues deductions ceased, plaintiff's claim was moot); *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 886 (C.D. Cal. 2019) (plaintiff's resignation from the union made it "absolutely clear" that the allegedly wrongful behavior could not reasonably be expected to recur).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

In *Smith*, for instance, a former union member claimed that he had the First Amendment right to avoid the terms of his membership agreement, which made deductions revocable only on an annual basis or at the expiration of the CBA. *Smith v. Superior Ct.*, *Cty. of Contra Costa*, No. 18-cv-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) ("*Smith I*"); *Smith II*, 2019 WL 2476679, at *2. But these claims, including the challenge to existing California statutes, were moot, since the plaintiff's employer stopped deducting fees "by operation of the membership agreement." *Smith II*, 2019 WL 2476679, at *1.

While issues that are "capable of repetition, yet evading review" present an exception to the mootness doctrine, "[t]he doctrine is limited to extraordinary cases in which: (1) the duration of the challenged action is too short to be fully litigated before it ceases; and (2) there is a reasonable expectation that the plaintiffs will be subjected to the same action again." *Am. Rivers*, 126 F.3d at 1124 (quoting *Alaska Fish & Wildlife Fed'n v. Dunkle*, 829 F.2d 933, 939 (9th Cir. 1987)). Wolf does not allege that he intends to become a member of UPTE again and then resign, nor would it be plausible to think that he would do so.[3] *Babb*, 378 F. Supp. 3d at 886; *Smith II*, 2019 WL 2476679, at *1. Thus, no possible mootness exception applies, and Wolf's claims for prospective relief must be dismissed.

**B.     Wolf voluntarily agreed to become an UPTE member and to pay a service fee even if he resigned his union membership**

Even if not dismissed as moot, all of Wolf's claims fail as a matter of law, because he voluntarily agreed to become an UPTE member and to continue paying an annually renewing service fee even if he resigned his membership. The membership agreement Wolf signed is a contractually binding obligation, and neither the First Amendment nor *Janus* entitle him to declaratory relief freeing him from this obligation or a refund for the dues or fees he agreed to pay.

---

[3] Likewise, this is not an instance of "voluntary cessation," where courts continue to have jurisdiction because the defendant stopped the allegedly unlawful conduct in response to litigation—Wolf admits that the deductions were stopped well before he filed suit and again, there is no reasonable exception Wolf will rejoin UPTE in order to resign again. *See Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) (voluntary cessation exception to mootness applies only if the cessation arose "because of the litigation"); *see also Pub. Util. Comm'n v. Fed. Energy Regulatory Comm'n*, 100 F.3d 1451, 1460 (9th Cir. 1996).

### 1. Wolf voluntarily and affirmatively agreed to pay a service fee if he resigned his union membership

Wolf alleges that the Union collected union dues from his paycheck "without his consent." FAC ¶ 30. But Wolf voluntarily became a member of UPTE and authorized the deductions at issue. *Id.* at ¶ 13. The membership agreement Wolf signed states in clear and simple terms that he was voluntarily agreeing to such deductions:

> I direct UC to deduct membership dues from my monthly pay, and to transfer that money to UPTE. . . . . I understand that both union members and nonmembers benefit from representation and should contribute. If I resign or have resigned my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree *voluntarily* to contribute my fair share by paying a service fee in an amount equal to dues. I direct UC to deduct this service fee from my monthly pay and to transfer that money to UPTE. I understand that this *voluntary* service fee authorization shall renew each year on the anniversary of the date I sign below, unless I mail a signed revocation letter to UPTE's central office, postmarked between 75 days and 45 days before such annual renewal date.

Liou Decl., Exh. A (emphasis added). Wolf admits in the FAC that he signed the deduction authorization and does not allege that UC or anyone else compelled him to sign; he has therefore pled facts establishing affirmative consent to the deductions he now challenges. *See* FAC ¶ 13.

The use of voluntary dues authorizations is a long-standing, accepted practice that creates a private binding contract between unions and their members. *See Belgau v. Inslee*, No. 18-5620 RJB, 2018 WL 4931602, at *5 (W.D. Wash. Oct. 11, 2018) ("*Belgau I*") ("Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year."); *O'Callaghan v. Regents of the Univ. of California*, No. CV 19-02289JVS(DFMx), 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019) (individuals affirmatively chose to become members and accept the terms of a contract that could limit their ability to revoke authorized dues-deductions in exchange for union membership rights); *Smith I*, 2018 WL 6072806, at *1 (plaintiff voluntarily became a union member and formed a contract with the union); *Fisk v. Inslee*, No. C16-5889RBL, 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017), *aff'd* No. 17-35957, 759 F. App'x 632, 2019 WL 141253 (9th Cir. 2019) (a signed membership card constitutes a valid contract); *Cooley v. California Statewide Law Enf't Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019) (union membership application constitutes a valid contract); *Bermudez v.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

*Serv. Employees Int'l Union, Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) (agreement to pay dues was a valid contractual term). The National Labor Relations Act also expressly authorizes voluntary dues agreements that remain irrevocable for up to one year. *See* 29 U.S.C. § 186(c)(4). The Postal Reorganization Act also provides the same. 39 U.S.C. § 1205.

Such authorizations create lawfully binding financial obligations that can continue after an employee resigns from the union.[4] Wolf's attempt to get out from the valid contract terms to which he already bound himself should fail. In *NLRB v. U.S. Postal Service*, plaintiff signed a dues authorization card that was irrevocable for one year. 827 F.2d 548, 550 (9th Cir. 1987). The plaintiff resigned his membership early, but the union and employer refused to stop his deductions. The Ninth Circuit held that the plaintiff could not escape the terms of a signed dues deduction authorization, explaining that a "party's duty to perform even a wholly executory contract is not excused merely because he decides that he no longer wants the consideration for which he has bargained." *Id.* at 554.

Similarly, in *Fisk v. Inslee,* plaintiffs who joined a union and signed an agreement to pay dues for a year sent a letter of objection and rescission of support for the union prior to the end of the year term. 2017 WL 4619223, at *4. Plaintiffs alleged that they were entitled to an immediate cessation of deduction of their dues. In concluding that the plaintiffs were not entitled to relief, the court reasoned: "A worker has every right to voluntarily associate with a union in order to promote better working conditions and wages. Correspondingly, a worker can refuse to associate with or join a union. That is her prerogative. But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement." *Id.* at *5.

As recognized in *Fisk*, temporarily irrevocable dues authorizations serve the dual roles of providing important financial stability to unions and preventing workers from unfairly taking advantage of the union. *Id.* at *3. "Based on the number of signed cards, [the Union] can forecast

---

[4] In other contexts, temporary irrevocable payment authorizations are commonplace. Many consumer contracts, such as gym memberships or cell phone contracts, cannot be revoked for a period of time. These contracts are enforceable.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

how much revenue over a given year and budget accordingly." *Id.* This stability allows the union to make longer-term financial commitments. *Id.* In addition, the authorizations prevent workers from "gaming the system" by paying dues for one month to become eligible to vote in a union officer election, or attending the union's convention, and then declining to make future financial contributions. *Id.*

Here, UPTE merely followed the terms of Wolf's contractual obligation. In exchange for executing the membership agreement, Wolf enjoyed the privileges and benefits of union membership. As Wolf himself admits, when he properly submitted a request to cease deductions during the annual cancellation period, UPTE requested that UC stop deducting from his paycheck, and in fact, his deductions did end. FAC ¶¶ 20-23.

### 2. The First Amendment does not permit Wolf to breach his contractual obligations

Wolf's membership agreement is binding, and the First Amendment does not provide him with a vehicle for escaping the contractual terms that he voluntarily entered into. As the Supreme Court established in *Cohen v. Cowles Media Co.*, the First Amendment does not confer "a constitutional right to disregard promises that would otherwise be enforced under state law." 501 U.S. 663, 672 (1991). In that case, the Supreme Court recognized that the First Amendment did not prohibit enforcement of a newspaper's promise not to reveal the identity of a confidential source: the doctrine of promissory estoppel required the newspaper keep its promise. *Id.* at 669.

Courts have uniformly held that individuals who have executed voluntary dues commitment authorization cards may not escape such agreements based on any First Amendment right. For example, in granting summary judgment in *Fisk*, the court reasoned:

> The freedom of speech and the freedom of association do not trump the obligations and promises voluntarily and knowingly assumed. The other party to that contract has every reason to depend on those promises for the purpose of planning and budgeting resources. The Constitution says nothing affirmative about reneging legal and lawful responsibilities freely undertaken.

*Fisk*, 2017 WL 4619223, at *5. The Ninth Circuit affirmed in an unpublished decision. *See* 759 F. App'x 632, 2019 WL 141253 (9th Cir. 2019).

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

Other cases are in accord. *See O'Callaghan*, 2019 WL 2635585, at \*3 (UC employees affirmatively agreed to union membership through a signed dues authorization card, so they failed to "me[e]t their burden of demonstrating a likelihood of success in proving that the continued deductions violate their First Amendment rights"); *Belgau I*, 2018 WL 4931602, at \*5 (W.D. Wash. Oct. 11, 2018) ("Here, unlike in *Janus*, the Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year . . . . Plaintiffs' assertions that they didn't knowingly give up their First Amendment rights before *Janus* rings hollow.")

### 3. *Janus* does not change the binding nature of Wolf's contractual obligation

Nor does *Janus* alter the First Amendment analysis. The issue in *Janus* was whether the First Amendment prohibited the state from requiring non-members—who had not executed any agreement with the union—to pay fees to the union as a mandatory condition of employment:

> Neither an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, *unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights,* and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted) (emphasis added). The plaintiff in *Janus* was not a union member, and the Supreme Court's decision striking down mandatory agency fees applied only to nonmembers who had not signed up to join their union.

Here, Wolf was, by his own admission, a member of UPTE who affirmatively consented to dues deductions in exchange for the rights and privileges of union membership. Courts have consistently distinguished *Janus* in similar cases, finding that *Janus* does not impact the enforcement of contracts between members and their unions. In *Crockett v. NEA-Alaska*, a member similarly sought to escape his contractual commitment to the union. 367 F. Supp. 3d 996 (D. Alaska 2019). There, the Court held, "Plaintiffs['] . . . agreement[s] to become union members in exchange for benefits created a contract between them and their unions that remains enforceable

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

after *Janus.* Plaintiffs cannot seek to claw back money paid in exchange for already-provided

contractual benefits . . . based on later changes in the law." *Id.* at 1008 (internal quotations

omitted). Plaintiffs cannot seek to have "*Janus* . . . stand for the proposition that any union member

can change his mind at the drop of a hat, invoke the First Amendment, and renege on his

contractual obligation to pay dues." *Smith I*, 2018 WL 6072806, at *1.

      Nor does the fact that Wolf entered into a contract with UPTE prior to the *Janus* decision

mean that decision was compelled. Changes in the law do not give license to escape contractual

commitments. *See Coltec Industries Inc. v. Hobgood*, 280 F.3d 262 (3rd Cir. 2002) (where coal

company attempted to rescind agreement to dismiss certain causes of action because of a purported

reliance on a statute that the Supreme Court later deemed unconstitutional, the Third Circuit

rejected its efforts to rescind, stating "a change in the law does not, alone, justify such relief, even

when the changed is based on constitutional principles"); *see also Crockett*, 367 F. Supp. 3d at

1008 ("The fact that plaintiffs would not have opted to pay union membership fees if *Janus* had

been the law at the time of their decision does not mean their decision was therefore coerced.").

Likewise here, Wolf cannot escape his financial obligations. The simple fact that a law has

changed does not render a contractual commitment coerced, and Wolf cannot claim he was in any

way required to join UPTE.

      In fact, should Wolf's legal theory prevail, it would conflict with the First Amendment

rights of UPTE and its members. The First Amendment right to associate with unions has long

been recognized. *See Thomas v. Collins*, 323 U.S. 516, 534 (1945) (the "rights of assembly and

discussion" of a union and its members are protected by the First Amendment); *see also Conn.*

*State Fed'n of Teachers v. Bd. of Educ. Members*, 538 F.2d 471, 478 (2d Cir.1976) (it cannot "be

questioned that the First Amendment's protection of speech and associational rights extends to

labor union activities"). This includes the union's right to associate with its members on its own

chosen terms. *See Boy Scouts of Am. v. Dale*, 530 U.S. 640, 648 (2000) ("Government actions that

may unconstitutionally burden th[e] freedom [of association] may take many forms, one of which

is 'intrusion into the internal structure or affairs of an association' . . . ." (quoting *Roberts v. U.S.*

*Jaycees*, 468 U.S. 609, 623 (1984)).

UPTE and its members have affirmatively exercised their First Amendment rights to associate with each other on their own terms, which includes the membership terms Wolf assented to. Wolf's reading of *Janus* would impermissibly intrude on the exercise of their rights to free association, because it would outlaw the entirely permissible terms UPTE and its members have decided are appropriate as a condition of membership.

### 4. Even if a constitutional "waiver" analysis applied, Wolf waived his rights by voluntarily signing the membership agreement

Because there is no state action, as discussed below, the agreement between UPTE and Wolf does not trigger First Amendment scrutiny or any "waiver" analysis. But even if it did, there is no question that Wolf expressly agreed to the dues deductions. *Janus* is clear that public sector union members have waived their First Amendment right to not pay dues or to remain nonmembers: "By agreeing to pay, nonmembers are waiving their First Amendment rights." *Janus*, 138 S. Ct. at 2486. Here, Wolf waived his First Amendment rights, because he voluntarily signed UPTE's dues deduction authorization which clearly stated that he agreed to pay union dues.

Despite *Janus's* clear statement, Wolf alleges that "[u]nion dues deduction authorizations signed by government employees in California before the Supreme Court's decision in *Janus* cannot constitute affirmative consent by those employees to waive their First Amendment right not to pay union dues or fees." FAC ¶ 3. Wolf argues that he could not "affirmatively consent" to waive this right because, prior to *Janus*, nonmembers were required to pay fair-share fees.

But constitutional rights can be waived without "magic words" or an explicit reference to the constitutional right at issue, and Wolf's membership agreement satisfies any requirement for voluntary waiver. This rule has been consistently applied in a variety of contexts. For example, arbitration agreements and confidentiality agreements have been held enforceable where there has been no evidence to suggest that such agreements expressly referenced the constitutional right that was waived. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3 1198, 1200 (9th Cir. 2002) (arbitration agreements enforceable where no evidence that agreement stated employee had waived constitutional right to jury trial); *Cohen*, 501 U.S. at 671 (private party that voluntarily agrees to restrict its own speech waives first amendment rights); *Perricone v. Perricone*, 972 A.2d 666, 682

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

1  (Conn. 2009) ("[W]hen an agreement clearly sets forth the restrictions on constitutionally protected

2  speech, the talismanic recital of the words 'first amendment' would not add materially to the party's

3  understanding of the right being waived.").

4      Moreover, as discussed above, the fact that the law changed after Wolf signed his contract

5  with UPTE does not give him license to escape his financial obligations. The Supreme Court has

6  held that a contract to waive constitutional rights "made in the light of the then applicable law" is a

7  "knowing" agreement and "does not become vulnerable because later judicial decisions indicate

8  that the [decision to enter the agreement] rested on a faulty premise." *Brady v. United States*, 397

9  U.S. 742, 748, 757 (1970) (enforcing plea agreement where individual alleged death penalty

10  statute, later found unconstitutional, induced his decision to plead guilty); *see also*, *Crockett*, 367

11  F. Supp. 3d at 1008 ("Plaintiffs cannot seek to claw back money paid in exchange for already-

12  provided contractual benefits . . . based on later changes in the law."); *Coltec*, 280 F.3d at 277

13  ("[A] change in decisional the law does not, alone, justify such relief, even when the changed is

14  based on constitutional principles.").

15      At the same time, the membership agreement is also explicit that members are agreeing to

16  pay a voluntary service fee even if "the law no longer requires nonmembers to pay a fair share

17  fee"—that is, even after a decision such as *Janus* changed the law to prohibit mandatory agency

18  fees. Liou Decl., Exh. A. Particularly given that the form explicitly states that Wolf was

19  committing to become a member and authorize payroll deductions, Wolf cannot claim that his

20  decision to join UPTE was somehow not "freely given," and he has clearly waived any First

21  Amendment rights at issue here.

22      **C.    Wolf's membership agreement with UPTE is not state action under 42 U.S.C. §
23           1983**

24      Wolf's decision to join UPTE, which bound him to the financial obligations he now

25  opposes, is not subject to 42 U.S.C. § 1983 because it does not constitute state action. To state a

26  cause of action under § 1983, plaintiff must plead that "(1) the defendants acting under color of

27  state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes." *Gibson v.*

28  *United States*, 781 F.2d 1334, 1338 (9th Cir. 1986). The conduct that allegedly infringes upon a

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

constitutional right must be "fairly attributable" to the state. *Caviness v. Horizon Cmty. Learning Ctr., Inc*., 590 F.3d 806, 812 (9th Cir. 2010).

In *Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984 (9th Cir. 2013) the Ninth Circuit examined the level of government involvement required to elevate private action to the level of state action subject to constitutional scrutiny, using the following two prong test:

> The first prong asks whether the claimed constitutional deprivation resulted from "the exercise of some right or privilege created by the State or by a rule of conduct imposed by the state or by a person for whom the State is responsible." The second prong determines whether the party charged with the deprivation could be described in all fairness as a state actor.

*Naoko Ohno v. Yuko Yasuma*, 723 F.3d 984, 994 (9th Cir. 2013) (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)); *see also Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 922 (9th Cir. 2011); *Price v. State of Hawaii*, 939 F.2d 702, 708 (9th Cir. 1991). The court held that the district court's recognition and enforcement of a tort judgment issued by a Japanese Court did not constitute state action. Because the state was not responsible for the specific conduct that the Plaintiff alleged, it was not responsible for the alleged harm.

### 1. Wolf's claimed constitutional deprivation did not result from the exercise of a right or privilege created by the state

Under the first prong, because Wolf's alleged injury arises not because of state compulsion, but rather his own voluntary decision to join UPTE, his claim fails as a matter of law. Wolf does not allege that the state compelled him to join a union or to pay union dues as a condition of employment. He does not allege that the state drafted the dues authorization agreement or played any role at all in developing the language of the agreement. Rather, Wolf alleges that that the state *enforced* his private, voluntary, contractual agreement by deducting from his wages. Like in *Belgau v. Inslee*, 359 F. Supp. 3d 1000, 1012 (W.D. Wash. 2019), the real action that Wolf challenges is his own decision to enter into an agreement with UPTE.

In *Bain v. California Teachers Association*, the Court held that the public employer's dues deductions, made pursuant to membership agreements between the union and its public employee members, did not involve state action and thus was not subject to constitutional scrutiny. *Bain v.*

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

*California Teachers Ass'n*, 156 F. Supp. 3d 1142, 1152 (C.D. Cal. 2015), *subsequent order,* No. 2:15-cv-02465-SVW-AJW, 2016 WL 6804921 (C.D. Cal. May 2, 2016), *appeal dismissed as moot*, 891 F.3d 1206 (9th Cir. 2018). Because the case did not involve compulsory agency fees such as in *Abood v. Detroit Bd. of Ed.*, 431 U.S. 209 (1977), or *Janus*, where the state required nonmembers to pay fees to the union, there was no state action. Plaintiffs could choose to join, or not join, a union, but the state did not compel any particular choice. 156 F. Supp. 3d at 1153.

California Government Code section 3583 (West 2019), which Wolf argues is unconstitutional, pertains to "maintenance of membership" provisions that could be bargained for, but, as discussed below, there was no such provision in UPTE's CBAs. Crucially, this law does not compel union membership as a condition of employment, or otherwise involve the state in workers' relationships with their unions. The University's deduction of dues pursuant to Wolf's own voluntary agreement plainly does not constitute state action but simply compliance with a contract. Thus, the conduct challenged here is the agreement, rather than any state action in the public employer's procedure for collecting dues.

### 2. UPTE is not a state actor under § 1983

Under the second prong, Wolf simply cannot show that the UPTE is a state actor. The "inquiry begins by identifying the specific conduct of which the plaintiff complains... because an entity may be a State actor for some purposes but not for others." *Caviness*, 590 F.3d at 812-813. There are four tests in determining whether a private person's actions amount to state action: (1) the public function test; (2) the joint action test; (3) the state compulsion test; and (4) the governmental nexus test. *Naoko Ohno*, 723 F.3d at 995; *see also Kirtley v. Rainey*, 326 F.3d 1088, 1092 (9th Cir. 2003); *Franklin v. Fox,* 312 F.3d 423, 445 (9th Cir. 2002).

### a. The public function test does not apply

"Under the public function test, when private individuals or groups are endowed by the State with powers or functions governmental in nature, they become agencies or instrumentalities of the State and subject to its constitutional limitations." *Florer*, 639 F.3d at 924 (internal quotation marks omitted). Here, Wolf has not alleged that UPTE was endowed by the state with any powers or functions governmental in nature. No statute that Wolf cites, or any other statute, vests UPTE

with state authority. UPTE's requirement that its members pay union dues, and its enforcement of that requirement, are not "traditionally" nor "exclusively governmental" functions. They simply arise due to the parties' obligations to the membership contract.

### b. The joint action test does not apply

"'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party, or otherwise has so far insinuated itself into a position of interdependence with the non-governmental party that it must be recognized as a joint participant in the challenged activity." *Naoko Ohno*, 723 F.3d at 996 *(*internal quotation marks and citations omitted). In other words, courts will look to whether "state officials and private parties have acted in concert in effecting a particular deprivation of constitutional rights." *Bain*, 156 F. Supp. 3d at 1153 (quoting *Franklin*, 312 F.3d at 445).

In *Bain*, the public employer's dues deductions, made pursuant to membership agreements, did not constitute joint action because there was no allegation of a "common objective or agreement between the unions and state officials." *Id.* While the plaintiffs alleged that California law "facilitate[d]" union coercion, they failed to allege a conspiracy between the state and the union. *Id.* The only cooperation alleged was the school district's participation in collective bargaining with the union, which played no role in establishing terms of union membership. *Id.* at 1154. Therefore, the plaintiffs' generalized allegations regarding the state's involvement amounted only to "passive acquiescence" and did not constitute joint action. *Id.* at 1153; *see also Franklin*, 312 F.3d at 441 ("A private individual may be liable under § 1983 if she conspired or entered joint action with a state actor.").

Similarly, here, the University played no role in Wolf's voluntary commitment to become an UPTE member. Wolf does not allege—nor can he—that UPTE and UC, or the State of California, are involved in a conspiracy to compel Wolf's union membership. The University's facilitation of the dues deductions did not amount to "significant assistance" in formulating Wolf's membership agreement. *See Naoko Ohno*, 723 F.3d at 996 (the district court's enforcement of order did not provide "significant assistance" to the underlying alleged act). Rather, like in *Bain*, the state's involvement here can at most be characterized as "passive acquiescence." 156 F. Supp.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

3d at 1153. The state played no role in Wolf's decision to join UPTE, and in fact, is expressly prohibited from interfering with unions and union membership. *See* Cal. Gov't Code § 3571(d) (West 2019) (unlawful for higher education employer to dominate or interfere with formation or administration of any employee union); Cal. Gov't Code § 1157.12(b) (West 2019) (employee requests regarding changes or cancellations to dues deductions must be directed to employee organizations).

### c.      The state compulsion test does not apply

Under the state compulsion test, "[a] state may be responsible for a private entity's actions if it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State." *Caviness*, 590 F.3d at 816.

Wolf has not alleged that the University or any other state actor encouraged Wolf to execute his agreement with UPTE. Again, California public higher education employers are expressly forbidden from dominating or interfering with the formation or administration of any employee union. Cal. Gov't Code § 3571(d). There are no allegations that the University had any involvement whatsoever in Wolf's membership decision: the University did not sign the agreement, opine on the terms of the agreement, or participate any way in formulating the agreement.

### d.      The government nexus test does not apply

"Under the governmental nexus test, a private party acts under color of state law if there is a 'sufficiently close nexus between the State and the challenged action of the regulated entity so that the action of the latter may be fairly treated as that of the State itself.'" *Naoko Ohno*, 723 F.3d at 996, n.13 (quoting *Lopez v. Dep't of Health Servs.*, 939 F.2d 881, 883 (9th Cir.1991)).

Again, Wolf's decision to become an UPTE member is distinct from any action taken by the University, and UC was not part of the agreement. The agreements are purely private and were developed without any government involvement.

///

///

///

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT

### D. Wolf does not plead, and UPTE does not have, a "maintenance of membership" provision in its collective bargaining agreement

In addition to the defects identified above, Count II of the FAC suffers from the fact that no maintenance of membership provision exists in UPTE's CBA, nor does Wolf plead that one exists or was applied against him.

California Government Code section 3583, which is part of the Higher Education Employer-Employee Relations Act, establishes that California higher education unions like UPTE can bargain for "maintenance of membership" provisions in their CBAs with employers. Under a maintenance of membership clause, someone who is or becomes a member while a CBA is in effect must continue to pay dues for the entire duration of the agreement, although the individual has the opportunity to end deductions 30 days prior to the expiration of the CBA. Cal. Gov't Code §§ 3583(a) (deductions would continue "for the duration of the written memorandum of understanding"), 3513(i) (defining "maintenance of membership" under the California State Employer-Employee Relations Act); *see also Colonie Fiber Co. v. NLRB*, 163 F.2d 65, 65 (2d Cir. 1947); *Horwath v. NLRB*, 539 F.2d 1093, 1095 (7th Cir. 1976).

However, there is no "maintenance of membership" provision in UPTE's CBA with UC. The CBA covering Wolf's bargaining unit, the Research Support Professionals unit, does not require maintenance of membership.[5] *See* RJN, Exh. A. In fact, Wolf does not plead that there is such a provision or that one was enforced against him. *See* FAC ¶¶ 35-37. Rather, Wolf's allegations are that he was held to the terms of the membership card he signed, not that the CBA's terms required him to continue deductions or remain a member of UPTE. *See id.* at ¶¶ 13-18, 20-24. Moreover, UPTE's CBA with UC expired after October 31, 2017, so even if the CBA had required "maintenance of membership," under such a provision Wolf would have been free to stop payroll deductions at any time since no contract was in place. Accordingly, Wolf has no claim that

---

[5] None of UPTE's CBAs with UC have such a provision. The other agreements with the University, for the Health Care Professionals and Technical bargaining units, are available at https://ucnet.universityofcalifornia.edu/labor/bargaining-units/hx/contract.html and https://ucnet.universityofcalifornia.edu/labor/bargaining-units/tx/contract.html.

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

§ 3583 or other statutes are unconstitutional, and he does not have standing to challenge these provisions.[6]

## V.    CONCLUSION

Because Wolf voluntarily agreed to become an UPTE member and to pay union dues or an equivalent service fee on a recurring, annual basis, he has no claim that holding him to those terms violates his First Amendment rights, and his claims for prospective relief are also moot. In light of these reasons and the others presented above, Wolf's claims fail as a matter of law, and the complaint should be dismissed.

Respectfully Submitted,

LEONARD CARDER, LLP

DATED: August 23, 2019            By:    _____/s/ *Arthur Liou*_____
                                                 Arthur Liou
                                                 Julia Lum
                                                 Danica Li

                                                 Attorneys for Defendant
                                                 UPTE-CWA Local 9119

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

---

[6] Section 3583 also states that mandatory agency fees or "fair share fees," as described in California Government Code section 3583.5, are a "[p]ermissible form[] of organizational security," but Wolf does not allege that he was ever subjected to mandatory agency fees. Cal. Gov't Code § 3583(b). Mandatory agency fees, which were at issue in *Janus*, applied only to nonmembers, and since he was a member of UPTE, Wolf never had agency fees deducted from his pay. He therefore has no standing to challenge section 3583(b). Additionally, there is no dispute that after *Janus*, public employees cannot be required to pay agency fees, and UPTE has not sought agency fees from Wolf or anyone else since *Janus*.

DEF. UPTE'S NOTICE OF MOTION & MOTION TO DISMISS FAC, AND MPA IN SUPPORT