Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

Brian K. Kelsey (*Admitted Pro Hac Vice*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Admitted Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Issac Wolf,<br>　　　　　Plaintiff,<br><br>v.<br><br>University Professional & Technical Employees, Communications Workers of America Local 9119 et al.,<br><br>　　　　　Defendants. | Case No. 3:19-cv-02881-WHA<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT UPTE'S MOTION TO DISMISS**<br><br>Date: September 26, 2019<br>Time: 8:00am<br>Courtroom: 12<br>Judge: Hon. William Alsup<br><br>Action Filed: May 24, 2019 |

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................................................................... 2

TABLE OF AUTHORITIES ............................................................................................ 3

INTRODUCTION ............................................................................................................. 6

ARGUMENT ..................................................................................................................... 6

    I.     Wolf's claims are not moot. ........................................................................ 7

    II.    Wolf did not provide affirmative consent to union membership. ................... 9

          A.     *Janus* requires that employees knowingly waive their rights. ............ 10

          B.     UPTE has no "good faith" defense for its constitutional violation. ................................................................................................. 12

          C.     The dues authorization is not protected from constitutional scrutiny because it is supposedly a private contract. ......................... 13

    III.   The deduction of dues from Wolf constitutes state action. .......................... 15

    IV.   UPTE denied Wolf's right to stop dues deductions pursuant to a "maintenance of membership" requirement in California statute. ............... 16

CONCLUSION ............................................................................................................... 17

# TABLE OF AUTHORITIES

*Abood v. Detroit Bd. of Educ.*,
    431 U.S. 209 (1977) .................................................................................................. 16

*Already, LLC v. Nike, Inc.*,
    568 U.S. 85 (2013) ..................................................................................................... 7

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................... 6

*Belgau v. Inslee, No. 18-5620 RJB*,
    2018 U.S. Dist. LEXIS 175543 (W.D. Wash. Oct. 11, 2018) ...................................... 7

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................... 6

*Brotherhood of Locomotive Firemen & Enginemen v. Northern P. R. Co.*,
    274 F.2d 641 (8th Cir. 1960) ............................................................................... 13-14

*Chi. Teachers Union, Local No. 1 v. Hudson*,
    475 U.S. 292 (1986) .................................................................................................. 16

*College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*,
    527 U.S. 666 (1999) ............................................................................................ 11-12

*D. H. Overmyer Co. v. Frick Co.*,
    405 U.S. 174 (1972) .................................................................................................. 11

*Fisk v. Inslee*,
    759 F.App'x 632 (9th Cir. 2019) ................................................................................ 8

*Fuentes v. Shevin*,
    407 U.S. 67 (1972) .................................................................................................... 14

*Halsey v. Cessna Aircraft Co.*,
    626 P.2d 810 ............................................................................................................. 14

*Harper v. Va. Dep't of Taxation*,
    509 U.S. 86 (1993) .................................................................................................... 12

*Int'l Ass'n of Machinists Dist. Ten v. Allen*,
    904 F.3d 490 (7th Cir. 2018) .................................................................................... 14

*Janus v. AFSCME, Council 31*,
    138 S. Ct. 2448 (2018) ............................................................................. 6, 10, 11, 17

*Johnson v. Zerbst*,
   304 U.S. 458 (1938) .................................................................................................. 11

*Jordan v. Fox, Rothschild, O'Brien & Frankel*,
   20 F.3d 1250 (3d Cir. 1994) ..................................................................................... 13

*Knox v. Davis*,
   260 F.3d 1009 (9th Cir. 2001) ................................................................................ 8-9

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012) ............................................................................................ 8, 16

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ................................................................................................. 15

*Marquez v. Screen Actors Guild*,
   525 U.S. 33 (1998) ................................................................................................... 15

*Neely v. United States*,
   546 F.2d 1059 (3d Cir. 1976) ................................................................................... 12

*NLRB v. Cameron Iron Works, Inc.*,
   591 F.2d 1 (5th Cir. 1979) ........................................................................................ 13

*NLRB v. Shen-Mar Food Products, Inc.*,
   557 F.2d 396 (4th Cir. 1977) .................................................................................... 14

*Ohio Bell Tel. Co. v. Public Utilities Comm'n*,
   301 U.S. 292 (1937) .................................................................................................. 11

*Ohno v. Yasuma*,
   723 F.3d 984 (9th Cir. 2013) .................................................................................... 16

*Ozolins v. Northwood-Kensett Community Sch. Dist.*,
   40 F. Supp. 2d 1055 (N.D. Iowa 1999) ..................................................................... 14

*Pasha v. United States*,
   484 F.2d 630 (7th Cir. 1973) ..................................................................................... 12

*Pinksy v. Duncan*,
   79 F.3d 306 (2d Cir. 1996) ........................................................................................ 13

*Roe v. Wade*,
   410 U.S. 113 (1973) .................................................................................................... 9

*Super Tire Eng'g Co. v. McCorkle*,
   416 U.S. 115 (1974) .................................................................................................... 9

*United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. IBEW, Local 313*,
   2015 U.S. Dist. LEXIS 8855 (D. Del.) .................................................................... 14

*United States v. Lewis*,
   342 F. Supp. 833 (E.D. La. 1972) ........................................................................ 12

*United States v. Lewis*,
   478 F.2d 835 (5th Cir. 1973) ............................................................................... 12

*Wyatt v. Cole*,
   994 F.2d 1113 (5th Cir. 1993) ....................................................................... 13, 13

Statutes

5 U.S.C. § 7115 ............................................................................................................ 13

29 U.S.C. § 186 ............................................................................................................ 13

42 U.S.C. § 1983 .......................................................................................................... 15

Cal. Gov't Code § 1157.12 ........................................................................................... 17

Cal. Gov't Code § 3583 ......................................................................................... 16-17

# INTRODUCTION

Plaintiff, Issac Wolf, brings this action to vindicate his First Amendment right not to join or support a union. Defendant University Professional and Technical Employees, Communications Workers of America Local 9119 ("UPTE" or the "Union"), the union that represents Wolf's bargaining unit, has filed a Motion to Dismiss the First Amended Complaint (Dkt. 47) ("Union MTD"). Wolf, therefore, submits this opposition to UPTE's motion. Defendant Joshua Golka, in his official capacity as Executive Director of the California Public Employee Relations Board ("PERB"), and Defendants Xavier Becerra, in his official capacity as Attorney General of California, and Anne Shaw, in her official capacity as Secretary of the Regents of the University of California, (collectively, the "Government Defendants") have all filed motions to dismiss as well. Their arguments are addressed in separate oppositions filed concurrently with this one.

Wolf's First Amended Complaint (Dkt. 39) asserts three claims for relief. Count I requests a declaration that the deduction of union dues from Wolf's paycheck was carried out without the affirmative consent required by *Janus v. AFSCME*, Council 31, 138 S. Ct. 2448, 2486 (2018). Count II requests a declaration that the provisions of California law pursuant to which this money was taken violate Wolf's First Amendment rights under *Janu*s. Count III requests damages in the amount of union dues previously deducted from Wolf's paycheck.

# ARGUMENT

To survive this Motion to Dismiss, Wolf need only state in his First Amended Complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). He should prevail, provided his First Amended Complaint demonstrates something "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

## I. Wolf's Claims are not Moot.

For months, Wolf was denied his right to withdraw his union membership. After continuing to take his money during this period, UPTE now contends the case is moot, and they should not have to defend the unconstitutional policy that they and the Government Defendants continue to enforce against any employee who is not determined enough to sue. Union MTD at 6. This is the same avoidance strategy that other unions have employed across the country, as they attempt to dodge employees who would challenge them. *See, e.g., Belgau v. Inslee*, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, at *7 (W.D. Wash. Oct. 11, 2018) (where, after being sued, the union changed course and said it would "instruct the State to end dues deductions for each Plaintiff on the one year anniversary" of their membership without requiring employees to send the notice their policy required). This Court should not allow the Union to avoid judicial review by picking off employees one by one. A "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982)). Wolf respectfully submits that this Court should not countenance such gimmicks.

The Ninth Circuit has already rejected the exact same mootness argument Defendants present here. As it explained:

> Although no class has been certified and SEIU and the State have stopped deducting dues from Appellants, Appellants' non-damages claims are the sort of inherently transitory claims for which continued litigation is permissible. *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) (deciding case not moot because the plaintiff's claim would not last "long enough for a district judge to certify the class"); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). Indeed, claims regarding the dues irrevocability provision would last for at most a year, and we have previously explained that even three years is "too short to allow for full judicial review." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010). Accordingly, Appellants' non-damages claims are not moot simply because the union is no longer deducting fees from Appellants.

*Fisk v. Inslee*, 759 F.App'x 632, 633 (9th Cir. 2019). The Ninth Circuit recognized that claims like Wolf's would never be addressed by the court if the union were allowed to moot them in this way. Indeed, since most union withdrawal windows are annual, few cases would reach judgment in a district court, much less have the opportunity for appellate review.[1]

Such tactics are not new; they are a typical and longstanding strategy by unions to avoid judicial scrutiny. In *Knox v. SEIU,* Local 1000, 567 U.S. 298 (2012), the Supreme Court rejected an attempt by the union to moot a case by sending a full refund of improperly exacted dues to an entire class:

> In opposing the petition for certiorari, the SEIU defended the decision below on the merits. After certiorari was granted, however, the union sent out a notice offering a full refund to all class members, and the union then promptly moved for dismissal of the case on the ground of mootness. Such post-certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye. *See City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 283-284, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001). The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.

*Knox*, 567 U.S. at 307. As in *Knox,* here the Union continues to assert the legality of its withdrawal window policy but wishes to avoid this Court examining that legality. Unlike in *Knox*, the Union has not even offered Wolf a full refund of his dues. Even if this Court were to determine this claim is limited to the statute of limitations, that would amount to a year's worth of dues, which the Union has neither paid nor offered to furnish. *See Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001) (California's Statute of Limitations for §1983

---

[1] The Ninth Circuit ultimately dismissed the case because of defective pleading that had failed to make the arguments in the district court that Wolf now presents to this Court. The circuit court found such arguments had been waived.

claims is one year).

Nor did UPTE ever offer Wolf anything in satisfaction of his claims for declaratory relief, nor attempt to satisfy his demand for attorneys' fees. Wolf, therefore, has a live damages claim for the union dues taken from him, and his challenge to the revocation policy cannot be moot. Whether Wolf should have been allowed to end his dues deduction when he first requested it in November is a necessary question for the Court to answer when determining whether he is owed damages, and if so in what amount. As was the case in *Knox*, one question is a logical predicate of the other.

These principles of law are not novel or unique to this case: it is well settled that where a claim is capable of repetition but will evade review, courts are empowered to issue declaratory judgments. In *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974), the Supreme Court recognized that "[i]t is sufficient…that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." The Court pointed to *Roe v. Wade,* 410 U.S. 113 (1973), where the birth of the plaintiff's child did not moot claims regarding a right to abortion—*Roe* did not require evidence that the Plaintiff would experience another unwanted pregnancy. The Court explained that even if the need for an injunction had passed, declaratory relief was still appropriate where there was "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Super Tire,* 416 U.S. at 125. The annual thirty-day time period in which to end dues deductions that Wolf was subject to is a policy of the State of California, embodied in an agreement it negotiated with UPTE. This policy continues to impact present interests, as the Government Defendants continue to enforce it and assert its legality. This continuing direct effect on the behavior of public employees is grounds for this Court's issuance of declaratory relief.

## II. Wolf did not provide affirmative consent to union membership.

### A. *Janus* requires that employees knowingly waive their rights.

The Court in *Janus* explained that payments to a union could be deducted from a nonmember's wages only if that employee "affirmatively consents" to pay:

> Neither an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, nonmembers are waiving their First Amendment rights, and such a waiver cannot be presumed. Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted).

After the decision in *Janus*, UPTE maintained that Wolf could only end his dues deduction during an arbitrary 30-day window of the union's choice, despite Wolf's repeated requests to stop the dues deduction from his paycheck. The Government Defendants also maintained that Wolf could only end his dues deduction during an arbitrary window of the Union's choice.

The union dues authorization application signed by Wolf before the Supreme Court's decision in *Janus* cannot meet the standards set forth for waiving a constitutional right, as required by the Supreme Court in *Janus*. 138 S. Ct. at 2484. Therefore, UPTE and the State Defendants cannot hold employees like Wolf to a time window to withdraw their union membership based on these invalid authorizations.

Since being informed of his constitutional rights by the *Janus* decision, Wolf has not signed any additional union authorization application. Therefore, he has never knowingly waived his constitutional right to pay nothing to the union, and has, therefore, never given the union the "affirmative consent" required by the *Janus* decision. In the absence of "affirmative consent," this Court should declare that a request to end dues deductions is effective immediately.

The union's own collective bargaining agreement with the University of California states that this outcome should apply to workers like Wolf:

> An employee may at any time cancel her/his authorization for payroll dues deduction by presenting her or his written request for termination and cancellation to the designated University office. The University will send a copy of the written request for cancellation of dues deduction to UPTE.

Collective Bargaining Agreement between University of California and UPTE, December 20, 2013 – September 30, 2017, at 148.[2] Wolf is asking only that UPTE honor the terms of the agreement that it negotiated with Napolitano.

For a person to properly waive his or her constitutional rights like the right to pay nothing to a union, Supreme Court precedent provides that certain standards must be met. First, waiver of a constitutional right must be of a "known right or privilege." *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938). Second, the waiver must be freely given; it must be voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.,* 405 U.S. 174, 185-86 (1972). Finally, the Court has long held that it will "not presume acquiescence in the loss of fundamental rights." *Ohio Bell Tel. Co. v. Public Utilities Comm'n*, 301 U.S. 292, 307 (1937).

In Wolf's case, he could not have waived his First Amendment right to not join or pay a union. Neither UPTE nor his employer informed him of his right not to pay a union because, at the time he signed his union membership application, the Supreme Court had not yet issued its decision in *Janus*.

Because the Court will "not presume acquiescence in the loss of fundamental rights," *Ohio Bell Tel. Co.,* 301 U.S. at 307, the waiver of constitutional rights requires "clear and compelling evidence" that the employees wish to waive their First Amendment right not to pay union dues or fees. *Janus*, 138 S. Ct. 2484. In addition, "[c]ourts indulge every reasonable presumption against waiver of fundamental constitutional rights." *College Savings Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666 (1999) (citing *Aetna Ins. Co. v. Kennedy ex rel. Bogash*, 301 U.S. 389, 393 (1937)).

---

[2] While the agreement ended prior to Wolf signing his Union membership application, it remained in effect until the subsequent agreement was ratified in August 2019.

The union application Wolf signed did not provide a clear and compelling waiver of his First Amendment right not to join or pay a union because it did not expressly state that he had a constitutional right not to pay a union and because it did not expressly state that he was waiving that right.

**B. UPTE has no "good faith" defense for its constitutional violation.**

UPTE cannot rely on the extant case law at the time Wolf signed his union authorization. In *Harper v. Va. Dep't of Taxation*, 509 U.S. 86, 97 (1993), the Supreme Court explained that "[w]hen this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule." The rule announced in *Janus* is, therefore, the relevant law when analyzing pre-*Janus* conduct.

UPTE's liability for dues paid by Wolf, therefore, extends backward before *Janus*, limited only, if at all, by a possible statute of limitations defense. Monies or property taken from individuals under statutes later found unconstitutional must be returned to their rightful owner. In *Harper*, taxes collected from individuals under a statute later declared unconstitutional were returned. *Id.* at 98-99. Fines collected from individuals pursuant to statutes later declared unconstitutional also must be returned. *See Pasha v. United States*, 484 F.2d 630, 632-33 (7th Cir. 1973); *United States v. Lewis*, 478 F.2d 835, 846 (5th Cir. 1973); *Neely v. United States*, 546 F.2d 1059, 1061 (3d Cir. 1976). "Fairness and equity compel [the return of the unconstitutional fine], and a citizen has the right to expect as much from his government, notwithstanding the fact that the government and the court were proceeding in good faith[.]" *United States v. Lewis*, 342 F. Supp. 833, 836 (E.D. La. 1972).

While there are some circuit court decisions finding "good faith" to be a defense to a prejudgment replevin or attachment of property without due process of law, even in those cases the defendant had to return the property at issue. In *Wyatt v. Cole*, 994 F.2d 1113, 1115 (5th Cir. 1993), the defendants seized the plaintiff's cattle and tractor based on a

replevin statute later held unconstitutional on due process grounds. While a "good faith" defense shielded the defendants from liability from incidental damages, they still had to return the cattle and tractor. *Id*. In *Pinsky v. Duncan*, 79 F.3d 306, 311-13 (2d Cir. 1996), where a defendant attained an unconstitutional attachment on plaintiff's real property, the defendant did not retain that property. In *Jordan v. Fox, Rothschild, O'Brien & Frankel*, 20 F.3d 1250, 1258 (3d Cir. 1994), where the defendant attained an unconstitutional attachment on plaintiff's checking account, the state court "vacated the attachment of [plaintiff's] checking account."

Under *Harper* and these precedents, UPTE has no "good faith" basis to hold Wolf to his union authorization or to keep the monies it seized from his wages before the Supreme Court put an end to this unconstitutional practice. Wolf is due a refund of these dues and a declaration that their deduction was unconstitutional.

### C. The dues authorization is not protected from constitutional scrutiny because it is supposedly a private contract.

According to UPTE, "Wolf's membership agreement is binding, and the First Amendment does not provide him with a vehicle for escaping the contractual terms that he voluntarily entered into." Union MTD at 10. This is wrong on several counts.

First, a dues-deduction authorization is a three-party *assignment*, not a traditional two-party contract. For federal employees, 29 U.S.C. § 186(c)(4), part of the Taft-Hartley Act, expressly describes "money deducted from the wages of employees in payment of membership dues in a labor organization" as "a written assignment." *Accord* 5 U.S.C. § 7115 (also referring to payroll union dues authorizations by federal employees as a "written assignment"). A number of federal cases also refer to dues-deduction authorizations as an assignment, not a contract. *See, e.g., NLRB v. Cameron Iron Works, Inc.*, 591 F.2d 1, 3 (5th Cir. 1979); *Brotherhood of Locomotive Firemen & Enginemen v. Northern P. R. Co.*, 274 F.2d 641 (8th Cir. 1960); *United Ass'n of Journeymen & Apprentice Plumbers & Pipefitters v. IBEW, Local 313*, 2015 U.S. Dist. LEXIS 8855, *21 (D. Del.)

Case No. 3:19-cv-02881-WHA                    13
PLAINTIFF'S OPPOSITION TO DEFENDANT UPTE'S MOTION TO DISMISS

(discussing 29 U.S.C. § 186(c)(4)). Dues-deduction authorizations or collective bargaining agreements themselves often also use the language of assignment. *See, e.g., NLRB v. Shen-Mar Food Products, Inc.*, 557 F.2d 396, 398 (4th Cir. 1977); *Ozolins v. Northwood-Kensett Community Sch. Dist.*, 40 F. Supp. 2d 1055, 1071 (N.D. Iowa 1999); *Halsey v. Cessna Aircraft Co.*, 626 P.2d 810, 811 (Kas. App. 1981).

As a three-party assignment, union authorizations clearly involve state action: the employee (party one) directs the public employer (party two) to assign a portion of his or her wages to the union (party three). The state is an integral party to the process, and thus execution of the authorization is appropriately considered state action subject to First Amendment scrutiny.

Alternatively, unions in other contexts have argued that dues deduction authorizations are contracts between the employer and the employee. *See, e.g., Int'l Ass'n of Machinists Dist. Ten v. Allen*, 904 F.3d 490, 492 (7th Cir. 2018) ("A dues-checkoff authorization is a contract between an employer and employee for payroll deductions. . . . The union itself is not a party to the authorization . . ."). If the dues authorization is a contract with the employer, then clearly it constitutes state action and is not a private contract.

Even if the dues authorization were a private contract between the employee and the union – which it is not – it is well-established that private contracts that require a person to waive a constitutional right must meet certain standards for informed, affirmative consent without pressure, and the Union cannot meet those standards here. *See Fuentes v. Shevin*, 407 U.S. 67 (1972) (establishing the standards for waiver of constitutional rights in private contracts, drawing upon *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972)). Applying *Janus* retroactively, per *Harper*, Wolf could not have knowingly and voluntarily waived his rights because he did not know of them at the time. But even setting *Janus* aside, the dues authorizations did not meet the standards for knowing and voluntary waiver of rights. The dues authorization signed by Wolf did not inform him of his right to pay a lesser fee instead of paying full membership dues, which is essential information before someone can make a valid, enforceable waiver of rights in a union dues authorization. *Marquez v. Screen Actors*

*Guild*, 525 U.S. 33, 43 (1998) ("If a union negotiates a union security clause, it must notify workers that they may satisfy the membership requirement by paying fees to support the union's representational activities, and it must enforce the clause in conformity with this notification.").

### III. The deduction of dues from Wolf constitutes state action.

UPTE asserts that actions taken by state officers pursuant to a state statute do not constitute state action. Union MTD at 14. When the state government uses the state payroll system to deduct dues from state-issued paychecks of state employees, that is the very definition of state action required for a suit brought under 42 U.S.C. § 1983. In fact, the Supreme Court has gone much further to impart state action to unions themselves in cases of unconstitutional dues deductions. This Court need look no further than the *Janus* decision itself, in which the union's deduction of agency fees constituted state action. An even more extreme example is the case of *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), which held that a private debt collector's actions constituted state action under § 1983. In that case, the Court also struck down an unconstitutional state statute because the private parties "invok[ed] the aid of state officials to take advantage of state-created attachment procedures." *Id.* at 934. In the present case, UPTE also has invoked the aid of state officials to take advantage of a state labor statutory scheme to withdraw its dues. State actors carrying out these state statutes constitutes state action under § 1983, and the question of whether such action is constitutional is properly before this Court.

UPTE defends this assertion by arguing that "Wolf's alleged injury arises not because of state compulsion, but rather his own voluntary decision to join UPTE," Union MTD at 15. But that is not the relevant question. The question is whether the state required Wolf to *remain* a member of the union after *Janus*, by continuing to take dues from his paycheck.

Among the tests for state action, "'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013). In this case, the

government has affirmed, authorized, and facilitated the deduction of dues from Wolf's paycheck. The state and the union sat down together and negotiated the contractual terms by which they would take members' dues, and the state carried out the union's instructions, just as it had regarding agency fee payers in *Janus*, where the Supreme Court never questioned the matter of state action.

Adopting UPTE's position on state action would require this Court to overturn a host of Supreme Court decisions on the subject. In *Knox* union exactions were held to be a First Amendment violation with requisite state action. 567 U.S. 315. Likewise, union accounting of chargeable and non-chargeable expenses from state employees amounted to state action. *Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 303 (1986). UPTE's argument would even mean that *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234 (1977), which *Janus* overturned, was likewise a mistake, because there could be no First Amendment question presented to the Court if the union exaction had not constituted state action. Wolf humbly submits that the Court should find that decades of Supreme Court cases applying First Amendment standards to public sector unions were not in error.

### IV. UPTE denied Wolf's right to stop dues deductions pursuant to a "maintenance of membership" requirement in California statute.

Finally, UPTE argues that Wolf cannot challenge the requirement that he maintain his membership in the union and continue paying dues because, in UPTE's interpretation of California law, a "maintenance of membership" provision would require Wolf to stay in the union until the expiration of the collective bargaining agreement. Union MTD at 19. But this is a misconception of what California law requires. Cal. Gov't Code § 3583 sets an unconstitutional ceiling, but not a floor, as to how long unions may trap government workers in union membership against their will. It protects only, "the right to resign from the employee organization within a period of 30 days prior to the expiration of a written memorandum of understanding." Cal. Gov't Code § 3583(a). Given that the UPTE agreement with Napolitano lasted four years, the statute required only that Wolf be given

Case No. 3:19-cv-02881-WHA   16
PLAINTIFF'S OPPOSITION TO DEFENDANT UPTE'S MOTION TO DISMISS

the opportunity to resign from the union once every four years. The statute allows Wolf to be unconstitutionally trapped in the Union for any time period less than four years, including the unconstitutional one-year period that Wolf is challenging in this lawsuit. Therefore, Wolf has standing to challenge the statute.

UPTE's defense of the related statute, Cal. Gov't Code § 1157.12, essentially amounts to an argument that the Union agreement Wolf signed is valid. For the reasons stated in Section II, *supra*, Wolf contends otherwise, and he has stated a claim on this point sufficient to survive a motion to dismiss. Moreover, the contention that employers must defer entirely to union judgments as to employees' union memberships is inconsistent with *Janus*, which holds that dues deductions cannot take place without evidence of affirmative consent. 138 S.Ct. at 2486. A public employer cannot fulfill its duties under *Janus* by simply deferring to the union. It must determine the presence of consent for itself in order to protect its employees' First Amendment rights.

## CONCLUSION

For the reasons stated above, UPTE's Motion to Dismiss should be denied.

Dated: September 6, 2019           Respectfully submitted,

<u>/s/ Brian K. Kelsey</u>
Brian K. Kelsey (Admitted Pro Hac Vice)
bkelsey@libertyjusticecenter.org
Reilly Stephens (Admitted Pro Hac Vice)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

Mark W. Bucher
mark@calpolicycenter.org

CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

*Attorneys for Plaintiff*