Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

Brian K. Kelsey (*Admitted Pro Hac Vice*)
bkelsey@libertyjusticecenter.org
Reilly Stephens (*Admitted Pro Hac Vice*)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Issac Wolf,<br>　　　　　Plaintiff,<br><br>v.<br><br>University Professional & Technical Employees, Communications Workers of America Local 9119 et al.,<br><br>　　　　　Defendants. | Case No. 3:19-cv-02881-WHA<br><br>**PLAINTIFF'S OPPOSITION TO THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS**<br><br>Date: September 26, 2019<br>Time: 8:00 A.M.<br>Courtroom: 12<br>Judge: Hon. William Alsup<br><br>Action Filed: May 24, 2019 |

**TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................................................................................2

TABLE OF AUTHORITIES..................................................................................................3

INTRODUCTION .................................................................................................................5

ARGUMENT .........................................................................................................................5

    I.     Wolf has standing as to Counts I and II. ........................................................5

    II.    Wolf's Counts I and II are not moot. ..............................................................6

    III.   The deduction of dues from Wolf constitutes state action. ............................9

    IV.   The pre-*Janus* agreement cannot absolve the constitutional injury. .............10

CONCLUSION ....................................................................................................................12

# TABLE OF AUTHORITIES

Cases

*Abood v. Detroit Bd. of Educ.*,
   431 U.S. 209 (1977) ................................................................................................ 11

*Allen v. Wright*,
   468 U.S. 737 (1984) .................................................................................................. 7

*Already, LLC v. Nike, Inc.*,
   568 U.S. 85 (2013) .................................................................................................... 8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) .................................................................................................. 6

*Belgau v. Inslee*, No. 18-5620 RJB,
   2018 U.S. Dist. LEXIS 175543 (W.D. Wash. Oct. 11, 2018) ..................................... 7

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................................................. 6

*Chi. Teachers Union, Local No. 1 v. Hudson*,
   475 U.S. 292 (1986) ................................................................................................ 11

*Cohen v. Cowles Media Co.*,
   501 U.S. 663 (1991) ................................................................................................ 12

*D. H. Overmyer Co. v. Frick Co.*,
   405 U.S. 174 (1972) ................................................................................................ 12

*Fisk v. Inslee*,
   759 F.App'x 632 (9th Cir. 2019) ................................................................................ 8

*Janus v. AFSCME, Council 31*,
   138 S. Ct. 2448 (2018) ......................................................................................... 6, 12

*Knox v. Davis*,
   260 F.3d 1009 (9th Cir. 2001) ................................................................................... 9

*Knox v. SEIU, Local 1000*,
   567 U.S. 298 (2012) ......................................................................................... 8, 9, 11

*Lugar v. Edmondson Oil Co.*,
   457 U.S. 922 (1982) ................................................................................................ 10

*New York Times Co. v. United States*,
 403 U.S. 713 (1971) .................................................................................................. 12

*Ohno v. Yasuma*,
 723 F.3d 984 (9th Cir. 2013) ...................................................................................... 11

*Roe v. Wade*,
 410 U.S. 113 (1973) .................................................................................................... 10

*Super Tire Eng'g Co. v. McCorkle*,
 416 U.S. 115 (1974) ............................................................................................... 9, 10

Statutes

42 U.S.C. § 1983 .................................................................................................................. 10

# INTRODUCTION

Plaintiff, Isaac Wolf, brings this action to vindicate his First Amendment right not to join or support a union. Defendants Joshua Golka, in his official capacity as Executive Director of the California Public Employee Relations Board, and Xavier Becerra, in his official capacity as Attorney General of California, (collectively, the "Government Defendants") have filed a Motion to Dismiss (Dkt. 46) ("Gov't MTD"). Defendants University Professional & Technical Employees, Communications Workers of America Local 9119 ("UPTE" or the "Union") and Janet Napolitano, in her official capacity as President of the University of California, have each filed their own Motions to Dismiss. Their arguments are addressed in separate oppositions filed concurrently with this one.

Wolf's First Amended Complaint (Dkt. 39) asserts three claims for relief. Count I requests a declaration that the deduction of union dues from Wolf's paycheck was carried out without the affirmative consent required by *Janus v. AFSCME*, Council 31, 138 S. Ct. 2448, 2486 (2018). Count II requests a declaration that the provisions of California law pursuant to which this money was taken violate Wolf's First Amendment rights under *Janus*. Count III requests damages in the amount of union dues previously deducted from Wolf's paycheck.

# ARGUMENT

To survive this Motion to Dismiss, Wolf need only state in his First Amended Complaint "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). He should prevail, provided his First Amended Complaint demonstrates something "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

I. **Wolf has standing as to Counts I and II.**

The Government Defendants first contend that Wolf has no standing as to Counts I

and II of the First Amended Complaint. In practice, this submission as to standing amounts to a claim that the Defendants have successfully mooted these claims due to their voluntary cessation of the challenged conduct.

To establish standing, Wolf "must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief." *Allen v. Wright*, 468 U.S. 737, 751 (1984). Wolf alleges an actual injury: a deprivation of the right guaranteed him by *Janus* not to join or support a union. This deprivation is fairly traceable to Defendants, who refused to allow him to withdraw his membership. The only argument the Government Defendants can put forward to say Wolf lacks standing is to argue that because they have chosen to no longer force Wolf to associate with the Union, there is no injury for the Court to redress because Defendants have successfully mooted the claims. This argument is substantively indistinguishable from the Government Defendants' mootness argument, which is addressed more fully in the next section.

## II. Wolf's Counts I and II are not moot.

For months, Wolf was denied his right to withdraw his union membership. After continuing to take his money during this period, the Government Defendants now contend the case is moot, and they should not have to defend their unconstitutional policy that they and UPTE continue to enforce against any employee who is not determined enough to sue. Gov't MTD at 4. This is the same avoidance strategy that other unions have employed across the country, as they attempt to dodge employees who would challenge them. *See, e.g., Belgau v. Inslee*, No. 18-5620 RJB, 2018 U.S. Dist. LEXIS 175543, at *7 (W.D. Wash. Oct. 11, 2018) (where, after being sued, the union changed course and said it would "instruct the State to end dues deductions for each Plaintiff on the one year anniversary" of their membership without requiring employees to send the notice their policy required). This Court should not allow Defendants to avoid judicial review by picking off employees one by one. A "defendant cannot automatically moot a case simply by ending its unlawful conduct once sued." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) (citing *City of*

*Mesquite v. Aladdin's Castle, Inc.*, 455 U. S. 283, 289 (1982)). Wolf respectfully submits that this Court should not countenance such gimmicks.

The Ninth Circuit has already rejected the exact same mootness argument Defendants present here. As it explained:

> Although no class has been certified and SEIU and the State have stopped deducting dues from Appellants, Appellants' non-damages claims are the sort of inherently transitory claims for which continued litigation is permissible. *See Gerstein v. Pugh*, 420 U.S. 103, 111 n.11, 95 S. Ct. 854, 43 L. Ed. 2d 54 (1975) (deciding case not moot because the plaintiff's claim would not last "long enough for a district judge to certify the class"); *see also County of Riverside v. McLaughlin*, 500 U.S. 44, 52, 111 S. Ct. 1661, 114 L. Ed. 2d 49 (1991). Indeed, claims regarding the dues irrevocability provision would last for at most a year, and we have previously explained that even three years is "too short to allow for full judicial review." *Johnson v. Rancho Santiago Cmty. Coll. Dist.*, 623 F.3d 1011, 1019 (9th Cir. 2010). Accordingly, Appellants' non-damages claims are not moot simply because the union is no longer deducting fees from Appellants.

*Fisk v. Inslee*, 759 F.App'x 632, 633 (9th Cir. 2019). The Ninth Circuit recognized that claims like Wolf's would never be addressed by the court if the union were allowed to moot them in this way. Indeed, since most union withdrawal windows are annual, few cases would reach judgment in a district court, much less have the opportunity for appellate review.[1]

Such tactics are not new; they are a typical and longstanding strategy by unions to avoid judicial scrutiny. In *Knox v. SEIU,* Local 1000, 567 U.S. 298 (2012), the Supreme Court rejected an attempt by the union to moot a case by sending a full refund of improperly exacted dues to an entire class:

> In opposing the petition for certiorari, the SEIU defended the decision below on the merits. After certiorari was granted, however, the union sent out a notice offering a full refund to all class members, and the union then promptly moved for dismissal of the case on the ground of mootness. Such post-

---

[1] The Ninth Circuit ultimately dismissed the case because of defective pleading that had failed to make the arguments in the district court that Wolf now presents to this Court. The circuit court found such arguments had been waived.

> certiorari maneuvers designed to insulate a decision from review by this Court must be viewed with a critical eye. *See City News & Novelty, Inc. v. Waukesha*, 531 U.S. 278, 283-284, 121 S. Ct. 743, 148 L. Ed. 2d 757 (2001). The voluntary cessation of challenged conduct does not ordinarily render a case moot because a dismissal for mootness would permit a resumption of the challenged conduct as soon as the case is dismissed. *See City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289, 102 S. Ct. 1070, 71 L. Ed. 2d 152 (1982). And here, since the union continues to defend the legality of the Political Fight-Back fee, it is not clear why the union would necessarily refrain from collecting similar fees in the future.

*Knox*, 567 U.S. at 307. As in *Knox,* here Defendants continue to assert the legality of their withdrawal window policy but wish to avoid this Court examining that legality. Unlike in *Knox*, the Union has not even offered Wolf a full refund of his dues. Even if this Court were to determine this claim is limited to the statute of limitations, that would amount to a year's worth of dues, which the Union has neither paid nor offered to furnish. *See Knox v. Davis,* 260 F.3d 1009, 1013 (9th Cir. 2001) (California's Statute of Limitations for §1983 claims is one year).

Nor did Defendants ever offer Wolf anything in satisfaction of his claims for declaratory relief, nor attempt to satisfy his demand for attorneys' fees. Wolf, therefore, has a live damages claim for the union dues taken from him, and his challenge to the revocation policy cannot be moot. Whether Wolf should have been allowed to end his dues deduction when he first requested it in November is a necessary question for the Court to answer when determining whether he is owed damages, and if so in what amount. As was the case in *Knox*, one question is a logical predicate of the other.

These principles of law are not novel or unique to this case: it is well settled that where a claim is capable of repetition but will evade review, courts are empowered to issue declaratory judgments. In *Super Tire Eng'g Co. v. McCorkle*, 416 U.S. 115, 125 (1974), the Supreme Court recognized that "[i]t is sufficient…that the litigant show the existence of an immediate and definite governmental action or policy that has adversely affected and continues to affect a present interest." The Court pointed to *Roe v. Wade,* 410 U.S. 113

Case No. 3:19-cv-02881-WHA  8
PLAINTIFF'S OPPOSITION TO THE GOVERNMENT DEFENDANTS' MOTION TO DISMISS

(1973), where the birth of the plaintiff's child did not moot claims regarding a right to abortion—*Roe* did not require evidence that the Plaintiff would experience another unwanted pregnancy. The Court explained that even if the need for an injunction had passed, declaratory relief was still appropriate where there was "governmental action directly affecting, and continuing to affect, the behavior of citizens in our society." *Super Tire,* 416 U.S. at 125. The annual thirty-day time period in which to end dues deductions that Wolf was subject to is a policy of the State of California, embodied in an agreement it negotiated with UPTE. This policy continues to impact present interests, as the Government Defendants continue to enforce it and assert its legality. This continuing direct effect on the behavior of public employees is grounds for this Court's issuance of declaratory relief.

### III. The deduction of dues from Wolf constitutes state action.

The Government Defendants assert that actions taken by state officers pursuant to a state statute do not constitute state action. Gov't MTD at 5. When the state government uses the state payroll system to deduct dues from state-issued paychecks of state employees, that is the very definition of state action required for a suit brought under 42 U.S.C. § 1983. In fact, the Supreme Court has gone much further to impart state action to unions themselves in cases of unconstitutional dues deductions. This Court need look no further than the *Janus* decision itself, in which the union's deduction of agency fees constituted state action. An even more extreme example is the case of *Lugar v. Edmondson Oil Co.,* 457 U.S. 922 (1982), which held that a private debt collector's actions constituted state action under § 1983. In that case, the Court also struck down an unconstitutional state statute because the private parties "invok[ed] the aid of state officials to take advantage of state-created attachment procedures." *Id.* at 934. In the present case, the Union also has invoked the aid of state officials to take advantage of a state labor statutory scheme to withdraw its dues. The state Government Defendants now file this motion to dismiss in defense of that scheme. State actors carrying out these state statutes constitutes state action under § 1983, and the question of whether such action is constitutional is properly before this Court.

The Government Defendants defend this assertion by arguing that Wolf's "alleged injury resulted from his voluntary decision to join the union." Gov't MTD at 5-6. But that is not the relevant question. The question is whether the state required Wolf to *remain* a member of the union after *Janus*, by continuing to take dues from his paycheck.

Among the tests for state action, "'Joint action' exists where the government affirms, authorizes, encourages, or facilitates unconstitutional conduct through its involvement with a private party." *Ohno v. Yasuma*, 723 F.3d 984, 996 (9th Cir. 2013). In this case, the government has affirmed, authorized, and facilitated the deduction of dues from Wolf's paycheck. The state and the union sat down together and negotiated the contractual terms by which they would take members' dues, and the state carried out the union's instructions, just as it had regarding agency fee payers in *Janus*, where the Supreme Court never questioned the matter of state action.

Adopting the State Defendants' position would require this Court to overturn a host of Supreme Court decisions on the subject. In *Knox* union exactions were held to be a First Amendment violation with requisite state action. 567 U.S. 315. Likewise, union accounting of chargeable and non-chargeable expenses from state employees amounted to state action. *Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 303 (1986). The State Defendants' argument would even mean that *Abood v. Detroit Bd. of Educ.*, 431 U.S. 209, 234 (1977), which *Janus* overturned, was likewise a mistake, because there could be no First Amendment question presented to the Court if the union exaction had not constituted state action. Wolf humbly submits that the Court should find that decades of Supreme Court cases applying First Amendment standards to public sector unions were not in error.

### IV. The pre-*Janus* agreement cannot absolve the constitutional injury.

Finally, the Government Defendants argue that the union agreement signed absolves any violation of *Janus* because *Janus* did not hold that employees cannot consent to union membership. Gov't MTD at 12. That *Janus* allows employees to agree to union membership does not answer the question in this case: whether the agreement in question

is valid.

The union agreement that Wolf entered into was executed without Wolf's knowledge of his rights. Since there was no such knowledge, there could not have been a knowing waiver of those rights. Because the right not to pay fees or dues to a union had not been announced by the Supreme Court, Wolf could not have known that he was waiving that constitutional right; therefore, Wolf could not have "freely given" his "affirmative consent" as required by the *Janus* decision. 138 S. Ct. at 2486. Defendants fail to recognize this flaw in the formation of the contract on which they rely and erroneously claim that such agreements were freely entered into. A waiver of a constitutional right cannot be can be freely entered into if the parties to the agreement are not provided with the material fact of the very existence of the right. Any such waiver must be freely given in a manner that is voluntary, knowing, and intelligently made. *D. H. Overmyer Co. v. Frick Co.*, 405 U.S. 174, 185-86 (1972). Because it was not freely entered into, the agreement should not act as a barrier to this Court providing relief to Wolf.

The lack of full information is what distinguishes the promise made in *Cohen v. Cowles Media Co.,* 501 U.S. 663, 672 (1991), which is relied on by Defendants, and by the cases on which they rely. *See* Gov't MTD at 12. In *Cohen,* a newspaper agreed not to reveal a source, and having made that agreement, could not rely on the First Amendment to protect its publication of the information it had agreed not to reveal. *Cohen* amounts to a statement that one can waive a constitutional right, which Wolf acknowledges is consistent with *Janus*. But the First Amendment rights of newspapers were long established when *Cohen* was decided in 1991. *See, e.g., New York Times Co. v. United States,* 403 U.S. 713 (1971). There was no intervening change in the law that recognized a new right of newspapers between when the promise was made and when the case was decided. In this case, however, an intervening Supreme Court decision has clarified that Wolf signed his authorization subject to an unconstitutional choice between paying dues to the Union or paying agency fees to the Union. Because this choice is now known to

have been unconstitutional, the Court should find that Wolf has stated a claim on which relief could be granted sufficient to survive a motion to dismiss.

## CONCLUSION

For the reasons stated above, the Government Defendants' Motion to Dismiss should be denied.

Dated: September 6, 2019

Respectfully submitted,

/s/ Brian K. Kelsey
Brian K. Kelsey (Admitted Pro Hac Vice)
bkelsey@libertyjusticecenter.org
Reilly Stephens (Admitted Pro Hac Vice)
rstephens@libertyjusticecenter.org
Liberty Justice Center
190 South LaSalle Street
Suite 1500
Chicago, Illinois 60603
Phone: 312-263-7668
Fax: 312-263-7702

Mark W. Bucher
mark@calpolicycenter.org
CA S.B.N. # 210474
Law Office of Mark W. Bucher
18002 Irvine Blvd., Suite 108
Tustin, CA 92780-3321
Phone: 714-313-3706
Fax: 714-573-2297

*Attorneys for Plaintiff*