Arthur Liou (SBN 252690)
Julia Lum (SBN 310291)
Danica Li (SBN 308650)
LEONARD CARDER, LLP
1330 Broadway, Suite 1450
Oakland, CA 94612
Telephone: (510) 272-0169
Facsimile: (510) 272-0174
aliou@leonardcarder.com
jlum@leonardcarder.com
dli@leonardcarder.com

Attorneys for Defendant
UPTE-CWA Local 9119

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ISAAC WOLF,<br><br>  Plaintiff,<br><br>  v.<br><br>UNIVERSITY PROFESSIONAL & TECHNICAL EMPLOYEES, COMMUNICATIONS WORKERS OF AMERICA LOCAL 9119; JANET NAPOLITANO, in her official capacity as President of the University of California; JOSHUA GOLKA, in his official capacity as Executive Director of the California Public Employment Relations Board; and XAVIER BECERRA, in his official capacity as Attorney General of California,<br><br>  Defendants. | Case No. 3:19-cv-02881-WHA<br><br>**DEFENDANT UPTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>Date:    September 26, 2019<br>Time:    8:00am<br>Courtroom:  12<br>Judge:    Hon. William Alsup<br><br>Action Filed: May 24, 2019 |

# TABLE OF CONTENTS

INTRODUCTION ..................................................................................................................................1

ARGUMENT .......................................................................................................................................3

I. There Is No Reasonable Expectation that Wolf Will Rejoin UPTE, Making His Declaratory Relief Claims Moot ...........................................................................................3

II. Wolf Signed an Explicit Membership Agreement Consenting to Payroll Deductions, Even if Mandatory Agency Fees Were Outlawed .................................................................5

    A. *Janus* Addressed the Rights of Nonmembers, Not Voluntary Union Members Like Wolf ...................................................................................................6

    B. The Supreme Court Has Not Applied a Heightened Waiver Analysis to Contractual Agreements Limiting First Amendment Rights ......................................7

    C. Even Applying a Heightened Waiver Analysis, Wolf Waived His Rights When He Signed UPTE's Membership Agreement .......................................................8

    D. California Government Code Section 1157.12 Superseded UPTE's Collective Bargaining Agreement with Regard to Cancellation of Deductions ......................................................................................................................9

III. Enforcement of an Agreement Between Private Parties Is Not State Action ........................9

IV. Wolf Did Not, and Cannot, Plead that California Government Code Section 3583 Was Applied to Him ............................................................................................................11

CONCLUSION ..................................................................................................................................13

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

# TABLE OF AUTHORITIES

**Federal Cases**

*Abood v. Detroit Board of Education,*
 431 U.S. 209 (1977) .............................................................................................................. 1, 10

*ACLU of Mass. v. U.S. Conference of Catholic Bishops,*
 705 F.3d 44 (1st Cir. 2013) ......................................................................................................... 4

*Already, LLC v. Nike, Inc.,*
 568 U.S. 85 (2013) ...................................................................................................................... 3

*Am. Rivers v. Nat'l Marine Fisheries,*
 126 F.3d 1118 (9th Cir. 1997) .................................................................................................... 4

*Anderson v. Service Employees International Union Local 503,*
 No. 3:18-cv-02013-HZ, 2019 WL 4246688 (D. Or. Sept. 4, 2019) ......................................... 2, 7

*Arizonans for Official English v. Arizona,*
 520 U.S. 43 (1997) ...................................................................................................................... 3

*Babb v. Cal. Teachers Ass'n,*
 378 F. Supp. 3d 857 (C.D. Cal. 2019) .................................................................................. 4, 12

*Belgau v. Inslee,*
 No. 18-5620 RJB, 2018 WL 4931602, (W.D. Wash. Oct. 11, 2018) ............................... 1, 6, 10

*Belgau v. Inslee,*
 359 F. Supp. 3d 2000 (W.D. Wash. 2019) ..................................................................... 2, 7, 10, 11

*Bermudez v. Serv. Employees Int'l Union, Local 521,*
 No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) ............................... 2

*Brady v. United States,*
 397 U.S. 742 (1970) ................................................................................................................ 7, 8

*Cal. Statewide Law Enforcement Ass'n,*
 PERB Decision No. 2089-S (Cal. Public Employment Relations Bd. Dec. 31, 2009), 2009 WL
 8154981 ..................................................................................................................................... 11

*Chicago Teachers Union, Local No. 1. v. Hudson,*
 475 U.S. 292 (1986) .................................................................................................................. 10

*Cohen v. Cowles Media Co.,*
 501 U.S. 663 (1991) ............................................................................................................ 5, 7, 8

*Colonie Fiber Co. v. NLRB,*
 163 F.2d 65 (2d Cir. 1947) ........................................................................................................ 11

*Cooley v. Cal. Statewide Law Enf't Ass'n,*
    No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, (E.D. Cal. Jan. 25, 2019) ................................ 2

*Cooley v. Cal. Statewide Law Enf't Ass'n,*
    385 F. Supp. 3d 1077 (E.D. Cal. 2019) ................................................................................ 2, 7

*D.H. Overmyer Co. v. Frick Co.,*
    405 U.S. 174 (1972) ................................................................................................................ 8

*Dingle v. Stevenson,*
    840 F.3d 171 (4th Cir. 2016) ................................................................................................... 7

*Fisk v. Inslee,*
    No. C16-5889RBL, 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017) ................................. 2, 6

*Fisk v. Inslee,*
    759 F. App'x 632, 2019 WL 141253 (9th Cir. 2019) ................................................... 2, 4, 5, 6

*Gerstein v. Pugh,*
    420 U.S. 103 (1975) ................................................................................................................ 4

*Golden v. Zwickler,*
    394 U.S. 103 (1969) ................................................................................................................ 3

*Horwath v. NLRB,*
    539 F.2d 1093 (7th Cir. 1976) ............................................................................................... 11

*Janus v. AFSCME Council 31,*
    138 S. Ct. 2448 (2018) .................................................................................................... passim

*Johnson v. Zerbst,*
    304 U.S. 458 (1938) ................................................................................................................ 8

*Kidwell v. Transp. Comm. Int'l Union,*
    946 F.2d 283 (4th Cir. 1991) ................................................................................................... 2

*Knox v. Serv. Employees Int'l Union, Local 1000,*
    567 U.S. 298 (2012) ........................................................................................................... 4, 10

*Messman v. Helmke,*
    133 F.3d 1042 (7th Cir. 1998) ............................................................................................... 10

*NLRB v. U.S. Postal Serv.,*
    827 F.2d 548 (9th Cir. 1987) ................................................................................................... 6

*O'Callaghan v. Regents of the Univ. of California,*
    No. CV 19-02289JVS(DFMx), 2019 WL 2635585, (C.D. Cal. June 10, 2019) ..................... 2

*Ohio Bell Tel. Co. v. Pub. Utilities Comm'n,*
    301 U.S. 292 (1937) ................................................................................................................ 8

*Ohno v. Yasuma,*
  723 F.3d 984 (9th Cir. 2013) .................................................................................................. 9

*Perez v. Murray,*
  No. 18-cv-01437-JSC, 2018 WL 2724241 (N.D. Cal. June 6, 2018) ............................................ 3

*Perricone v. Perricone,*
  292 Conn. 187 (2009) ............................................................................................................. 8

*Roberts v. AT&T Mobility LLC,*
  877 F.3d 833 (9th Cir. 2017) ................................................................................................ 10

*Rosebrock v. Mathis,*
  745 F.3d 963 (9th Cir. 2014). ................................................................................................. 3

*Smith v. Superior Ct., Cty. of Contra Costa,*
  No. 18-cv-05472-VC, 2018 WL 6072806, (N.D. Cal. Nov. 16, 2018) ........................................... 2

*Smith v. Bieker,*
  No. 18-cv-05472-VC, 2019 WL 2476679 (N.D. Cal. June 13, 2019) ................................... 2, 4, 7

*Sze v. INS,*
  153 F.3d 1005 (9th Cir. 1998) ............................................................................................ 3, 4

**Federal Statutes**

42 U.S.C. § 1983 ..................................................................................................................... 3, 9

**Other Authorities**

Cal. Gov't Code § 3513 (West 2019) ......................................................................................... 11

Cal. Gov't Code § 3583 (West 2019) ......................................................................................... 11

Cal. Gov't Code § 1157.12 ..................................................................................................... 9, 12

Act of June 27, 2018, 2018 Cal. Legis Serv. Ch. 53 (West) ........................................................... 9

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169 FAX: (510) 272-0174

# INTRODUCTION

Plaintiff Isaac Wolf voluntarily joined his union and agreed to pay dues in exchange for the privileges of union membership and the benefits of union representation. He agreed to financially support University Professional and Technical Employees, CWA Local 9119 (UPTE) even if "the law no longer requires nonmembers to pay a fair share fee"—that is, even if the Supreme Court overturned *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), making mandatory agency fee laws unconstitutional, as it did in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018). *See* Declaration of Arthur Liou (Liou Decl.), Exh. A, ECF No. 47-2. Given Wolf's explicit agreement to be an UPTE member and authorize payroll deductions, there is no basis for claiming that the voluntary deductions violated his First Amendment rights, and nothing about *Janus* counsels a different result.

Wolf's reliance on *Janus* misunderstands at least two fundamental aspects of the decision. First, *Janus* held that nonmembers cannot be compelled to pay agency fees, but it did not address the rights of members who voluntarily agreed to pay union dues or fees. *See* 138 S. Ct. at 2486. It certainly did not find that union members have the constitutional right to immediately end dues deductions they voluntarily consented to, without regard for the terms of the membership agreement. Second, and more fundamentally, *Janus* is explicit that "[b]y agreeing to pay, nonmembers are waiving their First Amendment rights" and when union members "clearly and affirmatively consent" to having money deducted, this satisfies the necessary constitutional standard. *Id.* That is precisely what Wolf did here when he consented to dues deductions and agreed that "[i]f I resign . . . my union membership and the law no longer requires nonmembers to pay a fair share fee, I nevertheless agree voluntarily to contribute my fair share by paying a service fee in an amount equal to dues." Liou Decl., Exh. A.

Every Ninth Circuit court that has considered similar post-*Janus* First Amendment claims by union members, including this one, have found the membership agreements binding and rejected plaintiffs' claims. *See, e.g.*, *Belgau v. Inslee*, No. 18-5620 RJB, 2018 WL 4931602, at \*5 (W.D. Wash. Oct. 11, 2018) (*Belgau I*) ("Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year."); *Belgau v. Inslee*, 359

1

DEF. UPTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

F. Supp. 3d 2000 (W.D. Wash. 2019) (*Belgau II*); *O'Callaghan v. Regents of the Univ. of California*, No. CV 19-02289JVS(DFMx), 2019 WL 2635585, at *3 (C.D. Cal. June 10, 2019) (individuals affirmatively chose to become members and accept the terms of a contract that could limit their ability to revoke authorized dues-deductions in exchange for union membership rights); *Smith v. Superior Ct., Cty. of Contra Costa*, No. 18-cv-05472-VC, 2018 WL 6072806, at *1 (N.D. Cal. Nov. 16, 2018) (*Smith I*) (plaintiff voluntarily became a union member and formed a contract with the union); *Smith v. Bieker*, No. 18-cv-05472-VC, 2019 WL 2476679 (N.D. Cal. June 13, 2019) (*Smith II*); *Fisk v. Inslee*, No. C16-5889RBL, 2017 WL 4619223 (W.D. Wash. Oct. 16, 2017), *aff'd* No. 17-35957, 759 F. App'x 632, 2019 WL 141253 (9th Cir. 2019) (a signed membership card constitutes a valid contract); *Cooley v. Cal. Statewide Law Enf't Ass'n*, No. 2:18-cv-02961-JAM-AC, 2019 WL 331170, at *3 (E.D. Cal. Jan. 25, 2019) (*Cooley I*) (union membership application constitutes a valid contract); *Cooley v. Cal. Statewide Law Enf't Ass'n*, 385 F. Supp. 3d 1077 (E.D. Cal. 2019) (*Cooley II*); *Bermudez v. Serv. Employees Int'l Union, Local 521*, No. 18-cv-04312-VC, 2019 WL 1615414, at *2 (N.D. Cal. Apr. 16, 2019) (agreement to pay dues was a valid contractual term).

Most recently, in *Anderson v. Service Employees International Union Local 503*, No. 3:18-cv-02013-HZ, 2019 WL 4246688 (D. Or. Sept. 4, 2019), the District Court of Oregon dismissed a complaint alleging that continuing dues deductions for an irrevocable one-year period violated union members' First Amendment rights. Following other courts, *Anderson* held that "where the employee . . . chooses to join [her union], the union membership money is not coerced" because "[t]he employee is a union member voluntarily." *Id.* at *3 (quoting *Kidwell v. Transp. Comm. Int'l Union*, 946 F.2d 283, 292-93 (4th Cir. 1991)). Plaintiffs were not "coerced" into joining, and even though *Janus* changed the law, that did not invalidate the contractual obligation created by the membership agreements because the individuals voluntarily entered into those terms. *Id.* ("[H]ere, unlike in *Janus*, Plaintiffs chose to become dues-paying members of their respective unions, . . . . In doing so, they acknowledged restrictions on when they could withdraw from membership.").

As UPTE showed in its motion to dismiss, there is no reason to reach a different outcome here. Wolf's claims for prospective relief are moot and all three counts lack the necessary state

action under 42 U.S.C. § 1983. UPTE's Motion to Dismiss First Amended Complaint (MTD) 6-7, 14-18, ECF No. 47. But even if that were not the case, his voluntary agreement to pay union dues or an equivalent service fee on an annually renewing basis is a binding, contractual obligation. Accordingly, his First Amended Complaint (FAC), ECF No. 39, should be dismissed.

## ARGUMENT

### I. There Is No Reasonable Expectation that Wolf Will Rejoin UPTE, Making His Declaratory Relief Claims Moot

All payroll deductions for Wolf stopped months before he filed suit, and there is no meaningful declaratory relief that could be granted here, since it cannot reasonably be expected that he would rejoin UPTE, sign the same membership agreement that he claims is unconstitutional, and then attempt to end the voluntary payroll deductions prematurely. Wolf's arguments that the mootness exceptions for voluntary cessation and issues "capable of repetition, yet evading review" apply ignore this reality and are incorrect.

In *Golden v. Zwickler*, 394 U.S. 103 (1969), for example, the Supreme Court found that a declaratory relief action challenging leafleting restrictions was moot, because the leaflet intended to be distributed concerned a candidate who chose not to stand for reelection. *Id.* at 959. Likewise, a state employee's claims against an English-only provision in the state constitution became moot when she left her employment with the state—since there was no risk the measure would apply to her, "it became plain that she lacked a still vital claim for prospective relief." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). So too here Wolf has no legally cognizable interest in the claims for prospective relief. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

As Wolf's own authorities demonstrate, the "voluntary cessation" exception applies only when a defendant attempts to moot a case by ending its unlawful conduct in response to litigation. *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013) ("We have recognized . . . that a defendant cannot automatically moot a case simply by ending its unlawful conduct *once sued*," emphasis added); *see also Sze v. INS*, 153 F.3d 1005, 1008 (9th Cir. 1998) (voluntary cessation exception applies only if cessation arose "because of the litigation," quotation marks and citation omitted); *accord Perez v. Murray,* No. 18-cv-01437-JSC, 2018 WL 2724241 at *2 (N.D. Cal. June 6, 2018)

(citing *Sze*). In *Knox v. Serv. Employees Int'l Union, Local 1000*, 567 U.S. 298 (2012), the union sent out the refunds to class members only after the Supreme Court had granted certiorari—well into and in response to the ongoing litigation. Unlike in *Knox*, Wolf's deductions ended before any litigation had commenced, consistent with the terms of the membership agreement he signed, so it is not subject to the "voluntary cessation" exception. FAC ¶¶ 20-23 (deductions ended by February 14, 2019); *cf. ACLU of Mass. v. U.S. Conference of Catholic Bishops*, 705 F.3d 44, 55 (1st Cir. 2013) (expiration of contract by its own terms is not voluntary cessation).

Wolf's claims also are not subject to the exception for claims "capable of repetition, yet evading review," as discussed in the motion to dismiss. Under that doctrine, the duration of the challenged action must be too short to fully litigate the claim before it ceases, but there must also be a reasonable expectation that the plaintiff will be subject to the same action again. *Am. Rivers v. Nat'l Marine Fisheries*, 126 F.3d 1118, 1123 (9th Cir. 1997). So while the duration here—a year or less—is sufficiently short that a claim could not be fully litigated, Wolf ignores that there is no reasonable chance he would ever be subject to dues deductions again. Indeed, Wolf makes no effort to argue that would be the case, even though it is an issue purely within his control. *See* Opp'n to UPTE's MTD 7-9, ECF No. 49.

The primary case Wolf relies on to argue against mootness, *Fisk v. Inslee*, 759 F. App'x 632 (9th Cir. 2019), is an unpublished decision and is not binding precedent. At the same time, *Fisk* involved a putative class action seeking relief on behalf of other similarly situated individuals and the decision discussed only the duration of the challenged conduct to find it note moot. *Id.* at 633. But in the context of a class complaint, there are grounds for limiting the application of the mootness doctrine because of the continued interest and validity of claims brought by other members of the class, even if named plaintiffs' claims become moot. *See Gerstein v. Pugh*, 420 U.S. 103, 110, n. 11 (1975). Wolf, by contrast, has sued in an individual capacity only, making that aspect of *Fisk* distinguishable.

Thus, the court should find that Wolf's claims for prospective relief against the payroll deductions and against California Government Code section 3583 are moot. *See, e.g.*, *Smith II*, 2019 WL 2476679, at *1; *Babb v. Cal. Teachers Ass'n*, 378 F. Supp. 3d 857, 886 (C.D. Cal. 2019).

LEONARD CARDER, LLP
ATTORNEYS
1330 BROADWAY, SUITE 1450
OAKLAND, CA 94612
TEL: (510) 272-0169  FAX: (510) 272-0174

As discussed next, there is also no question that Wolf is bound by the terms of the membership agreement that he signed, so he likewise has no claim for damages—indeed, this is precisely why the *Fisk* plaintiffs still lost notwithstanding the court's ruling on mootness. 759 F. App'x at 633-634 ("Although Appellants resigned their membership in the union and objected to providing continued financial support, the First Amendment does not preclude the enforcement of 'legal obligations' that are bargained-for and 'self-imposed' under state contract law," quoting *Cohen v. Cowles Media Co.*, 501 U.S. 663, 668-71 (1991)).

## II. Wolf Signed an Explicit Membership Agreement Consenting to Payroll Deductions, Even if Mandatory Agency Fees Were Outlawed

Even assuming Wolf's claims for prospective relief are not moot, the FAC fails to state a claim in light of the membership agreement Wolf voluntarily signed, which is incorporated into the complaint. *See* FAC ¶ 13; Liou Decl., Exh. A. Throughout his opposition to UPTE's motion to dismiss, Wolf ignores the terms of his signed membership card to repeat the mantra that any pre-*Janus* agreement is invalid, because it did not—and could not—explicitly advise that Wolf had a constitutional right not to contribute to the union. *See, e.g.*, Opp'n to UPTE's MTD 11 (arguing that Wolf could not have waived his First Amendment rights because "[n]either UPTE nor his employer informed him of his right not to pay a union because, at the time he signed his union membership application, the Supreme Court had not yet issued its decision in *Janus*").

But Wolf agreed to the continued deduction of voluntary service fees even if he resigned his membership and "the law no longer requires nonmembers to pay a fair share fee." Liou Decl., Exh. A. The membership agreement explicitly contemplated that at some point in the future, California law could change so that existing laws mandating agency fees—also known as "fair share" fees—were no longer effective, but UPTE members would nevertheless agree to financially support the union because of the benefits of effective union representation. Put simply, UPTE's membership agreement came as close as possible to telling members that there could be circumstances in which they would pay nothing without misstating the law, which, at the time, required nonmembers to pay agency fees and was constitutional under more than 40 years of Supreme Court precedent. Even with that understanding, Wolf signed the membership

5

DEF. UPTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

authorization, creating a binding financial obligation that continued after he resigned his membership. *NLRB v. U.S. Postal Serv.*, 827 F.2d 548, 550 (9th Cir. 1987); *Belgau I*, 2018 WL 4931602, at *5 ("Plaintiffs entered into a contract with the Union to be Union members and agreed in that contract to pay Union dues for one year."); *Fisk*, 2017 WL 4619223, at *5 ("A worker has every right to voluntarily associate with a union in order to promote better working conditions and wages. Correspondingly, a worker can refuse to associate with or join a union. That is her prerogative. But, once she joins voluntarily, in writing, she has the obligation to perform the terms of her agreement.").

At the same time, *Janus* does not require that union members be explicitly informed of their First Amendment rights or somehow create a heightened waiver standard applicable to contractual agreements to pay. Because Wolf "clearly and affirmatively" consented to the payroll deductions at issue here, even under *Janus* there is no violation of his First Amendment rights, and his claims should be dismissed. *Janus*, 138 S. Ct. at 2486.

### A. *Janus* Addressed the Rights of Nonmembers, Not Voluntary Union Members Like Wolf

*Janus* itself makes clear that its holding applies only to nonmembers; it does not address the rights of a union member such as Wolf who voluntarily signed a membership agreement. The very passage Wolf relies on from *Janus* illustrates this:

> Neither an agency fee nor any other payment to the union may be deducted from a *nonmember's* wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay. By agreeing to pay, *non-members* are waiving their First Amendment rights, and such a waiver cannot be presumed. . . . Rather, to be effective, the waiver must be freely given and shown by "clear and compelling" evidence. . . . Unless employees clearly and affirmatively consent before any money is taken from them, this standard cannot be met.

*Janus*, 138 S. Ct. at 2486 (citations omitted, emphasis added). *Janus* holds that nonmembers must consent to financially support a union, but it has little applicability here, because it says nothing about the rights of union members once they have joined the union.

///

The district court decisions that have considered this issue have found that *Janus* does not change the rights of members or permit them to abrogate their membership agreements. *See, e.g.*, *Smith II*, 2019 WL 2476679, at *2 ("*Janus* did not concern the relationship of unions and members; it concerned the relationship of unions and non-members."); *Belgau II*, 359 F. Supp. 3d at 1016 ("Plaintiffs' assertion that the agreements are not valid because they had not waived their First Amendment rights under *Janus* in their authorization agreements because they did not know of those rights yet, is without merit. Plaintiffs seek a broad expansion of the holding in *Janus*. *Janus* does not apply here—Janus was not a union member, unlike the Plaintiffs here, and Janus did not agree to a dues deduction, unlike the Plaintiffs here."); *Cooley II*, 385 F. Supp. 3d at 1079 (finding that "[t]he relationship between unions and their members was not at issue in *Janus*" and that "*Janus* did not automatically undo Mr. Cooley's agreement to be a member of the Union").

Ultimately, even where constitutional rights are concerned, changes in intervening law do not invalidate binding contractual obligations, nor would they here. *See Brady v. United States*, 397 U.S. 742, 757 (1970); *Dingle v. Stevenson*, 840 F.3d 171, 174-176 (4th Cir. 2016). *Janus* does not provide Wolf with a right to immediately terminate payroll deductions, and it likewise does not invalidate the consent he gave to those deductions.

### B. The Supreme Court Has Not Applied a Heightened Waiver Analysis to Contractual Agreements Limiting First Amendment Rights

Conspicuously absent from Wolf's opposition brief is any discussion of *Cohen v. Cowles Media Co.*, 501 U.S. 663 (1991), which UPTE cited in its motion to dismiss. MTD 10-11. As *Cohen* makes clear, the First Amendment does not confer "a constitutional right to disregard promises that would otherwise be enforced under state law." 501 U.S. at 672; *see also Smith II*, 2019 WL 2476679, at *2; *Anderson*, 2019 WL 4246688, at *2-*3 (citing cases).

*Cohen* specifically addressed a contractual waiver of First Amendment rights, because it concerned a promise not to reveal the identity of a confidential source. 501 U.S. at 669. But rather than applying the heightened waiver standard Wolf argues for, the Court simply applied the general law of promissory estoppel. 501 U.S. 669. And as in *Cohen*, the contractual obligation here likewise rests on legal principles of general applicability.

The cases cited by Wolf to argue that he could not have waived his rights are not analogous, and instead address issues such as waiver of the right to counsel or due process rights. *See* Opp'n to UPTE's MTD 11; *Johnson v. Zerbst*, 304 U.S. 458 (1938); *D.H. Overmyer Co. v. Frick Co.*, 405 U.S. 174 (1972); *Ohio Bell Tel. Co. v. Pub. Utilities Comm'n*, 301 U.S. 292 (1937). Thus, Wolf is incorrect when he argues that there is somehow a heavier burden here, and certainly Wolf's signed membership agreement is sufficient to establish that he has no First Amendment claims.

### C. Even Applying a Heightened Waiver Analysis, Wolf Waived His Rights When He Signed UPTE's Membership Agreement

Even assuming that some heightened waiver standard applies, Wolf's claims still fail because he entered into a voluntary, affirmative written dues agreement that unambiguously authorized payroll deductions.

*Janus* itself describes the standard that must be met for a nonmember to waive his or her First Amendment rights—the individual must "affirmatively consent[] to pay," which is precisely what Wolf did here. 138 S. Ct. at 2486. "By agreeing to pay, nonmembers are waiving their First Amendment rights . . . ." *Id.* Without question, Wolf consented before he had any dues deducted from his paychecks, fully satisfying any requirements under *Janus*, and Wolf does not contend otherwise.

Importantly, *Janus* focuses on the individual's consent to pay, not the individual's knowledge of the law, since it is agreeing to pay that is the voluntary and knowing action taken. This is consistent with *Brady*, where the waiver of rights was found to have been voluntary, knowing and intelligent when it was made "in light of the then applicable law." 397 U.S. at 757.

And as UPTE pointed out in its motion to dismiss, no magical invocation of the First Amendment is required even assuming the membership agreement restricted Wolf's free speech rights. *Perricone v. Perricone*, 292 Conn. 187, 210, 210 n. 22 (2009). The newspaper's promise in *Cohen* was binding without an invocation or explicit acknowledgement of First Amendment rights, and so too here the membership authorization was clear and unambiguous that Wolf was agreeing to continuing payroll deductions, which could be cancelled only during the appropriate window period. Accordingly, like in the other district court cases, the court should find that Wolf's

8
DEF. UPTE'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS FAC

membership agreement has always been valid.

### D. California Government Code Section 1157.12 Superseded UPTE's Collective Bargaining Agreement with Regard to Cancellation of Deductions

Wolf also argues that the collective bargaining agreement (CBA) provision stating that an employee can cancel dues deductions "at any time" by notifying the University of California (UC) means he should be able to end deductions immediately, notwithstanding the membership agreement. Opp'n to UPTE's MTD 10-11. This is incorrect.

First, contrary to Wolf's claim, the CBA between UPTE and UC expired after September 30, 2017, so was not in effect at the time Wolf sought to cancel the payroll deductions. *See* Opp'n to UPTE's MTD 11 n.2; Request for Judicial Notice (RJN), Exh. A, ECF No. 47-1; Current Contract for Research Support Professionals Unit, University of California, https://ucnet.universityofcalifornia.edu/labor/bargaining-units/rx/contract.html (last visited Sept. 11, 2019).

More importantly, the CBA terms were superseded by the enactment of California Government Code section 1157.12 (West 2019), which was signed by the governor and became law on June 27, 2018. *See* Act of June 27, 2018, 2018 Cal. Legis Serv. Ch. 53 (West) (California Senate Bill 866). Under section 1157.12, payroll deductions authorized by an employee "may be revoked only pursuant to the terms of the employee's written authorization." Accordingly, to the extent the CBA terms had any continuing force, they no longer did as of June 27, well before Wolf sought to cancel his deductions in November 2019. FAC ¶¶ 15-24.

## III. Enforcement of an Agreement Between Private Parties Is Not State Action

To assess whether there is "state action" for purposes of an action under 42 U.S.C. § 1983, courts look to the "source of the alleged constitutional harm." *Ohno v. Yasuma*, 723 F.3d 984, 995 (9th Cir. 2013). Contrary to Wolf's argument, UC's continued payroll deductions do not create state action, because the alleged harm here is the continuation of deductions pursuant to the membership agreement, not a compulsion imposed by UC or the State of California. Put slightly differently, the terms of Wolf's membership in UPTE are not attributable to any state actor, because those terms are set internally by the union and its members; they are a matter of private agreement, not state policy. *See Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998) ("In

general, a union is not a state actor. . . . Therefore, a union's internal governing rules usually are not subject to First Amendment prohibitions.").

Finding that enforcement of Wolf's membership agreement is not state action is consistent with section 1983 precedent. In *Roberts v. AT&T Mobility LLC*, 877 F.3d 833 (9th Cir. 2017), for example, the Ninth Circuit held that enforcement of an arbitration agreement between private parties does not constitute state action, even if the agreement allegedly violates constitutional rights. Although plaintiffs claimed that compelling arbitration violated their First Amendment right to petition the government, there was no state action for purpose of section 1983, because "private parties draft adhesive consumer arbitration clauses, not governments." *Id.* at 844 (quotation marks and citation omitted). No federal law required the plaintiffs to waive their First Amendment rights, and "there is no state action simply because the state enforces [a] private agreement." *Id.*

This issue was likewise addressed extensively in *Belgau II*, where the court rejected claims by former union members that their First Amendment rights were violated because of the one-year dues payment commitments they signed. *Belgau II*, 359 F.3d at 1006, 1015. The court found that the "claimed deprivation did not result [from] the exercise of some right or privilege or by a rule of conduct imposed by the State" but instead the plaintiffs' dispute was "whether the agreements they signed are valid." *Id.* at 1012. But the *Belgau II* plaintiffs "fail[ed] to show that the contents of the agreements are in any way attributable to the State," since there was no dispute that the "State Defendants did not play any role in drafting or in the formation of the agreements here." *Id.* So too here, Wolf is unable to show that UPTE's membership agreement or his choice to sign it is the product of actions by any governmental entity or individual, and there is no state action under section 1983.[1]

Nor does the characterization of dues deduction authorizations as assignments under the National Labor Relations Act, or the law of other states, change the fact that it is binding on Wolf. *See* Opp'n to UPTE's MTD 13-14. Again, when Wolf signed UPTE's membership agreement, he

---

[1] By contrast, the cases Wolf cites to claim that UPTE's position on state action would "overturn a host of Supreme Court decisions" all involve mandatory agency fees imposed pursuant to statutory authority. Opp'n to UPTE's MTD 15-16 (citing *Janus*; *Knox*; *Chicago Teachers Union, Local No. 1. v. Hudson*, 475 U.S. 292 (1986); and *Abood v. Bd. of Educ.*, 431 U.S. 209 (1977)).

voluntarily and affirmatively consented to continued deductions unless he cancelled within the specified 30-day period, creating a contractual obligation. UC's role in making the deduction was purely ministerial, and such administrative action is not state action. *Belgau II*, 359 F. Supp. 3d at 1013-14.

### IV. Wolf Did Not, and Cannot, Plead that California Government Code Section 3583 Was Applied to Him

Finally, Wolf continues to argue he has a claim for declaratory relief against California Government Code section 3583 but cannot identify how section 3583 applies to him or resulted in the infringement of his First Amendment rights. This deficiency in the FAC is a further reason Count II should be dismissed.

First, Wolf seems to read section 3583 far more expansively than its terms in an effort to have the law declared unconstitutional. As it is relevant here, section 3583 states that "[p]ermissible forms of organizationl security shall be limited to . . .":

> (a) An arrangement pursuant to which an employee may decide whether or not to join the recognized or certified employee organization, but which requires the employer to deduct from the wages or salary of any employee who does join, and pay to the employee organization which is the exclusive representative of that employee, the standard initiation fee, periodic dues, and general assessments of the organization *for the duration of the written memorandum of understanding*. This arrangement shall not deprive the employee of the right to resign from the employee organization within a period of 30 days prior to the expiration of a written memorandum of understanding.

(Emphasis added).[2] The text is explicit that the "arrangement" a union could negotiate is that if an employee joins as a union member, the employee must continue to pay dues during the life of the union contract—"for the duration of the written memorandum of understanding." Cal. Gov't Code § 3583(a). This is what is called "maintenance of membership" in California labor law and elsewhere. *See* Cal. Gov't Code § 3513(i) (West 2019); *Cal. Statewide Law Enforcement Ass'n*, PERB Decision No. 2089-S (Cal. Public Employment Relations Bd. Dec. 31, 2009), 2009 WL 8154981; *Colonie Fiber Co. v. NLRB*, 163 F.2d 65, 65 (2d Cir. 1947); *Horwath v. NLRB*, 539 F.2d 1093, 1095 (7th Cir. 1976). But that is the extent of section 3583's application, and it does not

---

[2] As UPTE noted in its Motion to Dismiss, Wolf does not challenge California Government Code section 3583(b), which no one disputes is unconstitutional after *Janus* because it authorizes mandatory agency fees.

authorize anything more or address membership agreements such as the one Wolf signed here.

Second, and more importantly, Wolf has never articulated how section 3583 has affected him, let alone resulted in the violation of his First Amendment rights. As UPTE made clear through its Request for Judicial Notice, it has not negotiated a "maintenance of membership" provision with UC, and therefore section 3583 does not apply here. RJN, Exh. A. In his opposition brief, Wolf does not dispute that this is the case, and nowhere does he plead that UPTE negotiated contract language creating a maintenance of membership requirement under section 3583. Moreover, the entire time that Wolf was a member of UPTE—from April 2018 to February 2019— UPTE's contract with UC was expired and any maintenance of membership requirement would not have applied. *See* RJN, Exh. A; Current Contract for Research Support Professionals Unit, University of California, https://ucnet.universityofcalifornia.edu/labor/bargaining-units/rx/contract.html (last visited Sept. 11, 2019). Accordingly, Wolf has no standing to challenge section 3583 and likewise has not stated a claim for relief against the law.

Lastly, Wolf makes arguments regarding California Government Code section 1157.12 (West 2019), but when he amended his complaint, Wolf dropped all allegations and demands for relief regarding section 1157.12. *Compare* FAC ¶¶ 34-37, Prayer for Relief *with* Complaint ¶¶ 35, 41, Prayer for Relief, ECF No. 1. Since he is no longer challenging section 1157.12, there is no need to address section 1157.12's validity, but even if there were, the law "on its face, does not violate the First Amendment" and merely requires California public employers to make deductions according to the information provided by unions and the authorization signed by the individual. *Babb*, 2019 WL 2022222, at *17. Again, holding Wolf to his voluntary agreement to pay fees for union representation does not violate the First Amendment, nor would section 1157.12 for instructing public employers to make deductions according to such agreements.

///
///
///
///
///

## CONCLUSION

For the foregoing reasons, Wolf cannot state a claim that his First Amendment rights were violated, and the First Amended Complaint should be dismissed without leave to amend.

Respectfully Submitted,

LEONARD CARDER, LLP

DATED: September 13, 2019     By:     /s/ *Arthur Liou*
Arthur Liou
Julia Lum
Danica Li

Attorneys for Defendant
UPTE-CWA Local 9119