1
2
3
4
5
6                    UNITED STATES DISTRICT COURT
7
8                   NORTHERN DISTRICT OF CALIFORNIA
9

10    ISAAC WOLF,
11              Plaintiff,                     No. C 19-02881 WHA

12         v.

13    UNIVERSITY PROFESSIONAL &               **ORDER RE MOTIONS FOR**
14    TECHNICAL EMPLOYEES,                    **SUMMARY JUDGMENT**
      COMMUNICATIONS WORKERS OF
15    AMERICA LOCAL 9119; JANET
      NAPOLITANO, in her official capacity as
16    President of the University of California;
      and XAVIER BECERRA, in his official
17    capacity as Attorney General of California,

18              Defendants.
19

20                        **INTRODUCTION**

21         State employee filed this action against his former union and state officials in their

22    official capacity, alleging defendants violated his First Amendment free speech rights by

23    deducting union dues from his wages, seeking declaratory and monetary relief.  Plaintiff and

24    defendants now cross-move for summary judgment.  Plaintiff's requests for declaratory relief

25    are now moot because he is no longer a state employee or a union a member.  Furthermore,

26    plaintiff's claim for damages under 42 U.S.C. § 1983 is squarely foreclosed by the recently

27    issued opinion in *Belgau v. Inslee*, 975 F.3d 940 (9th Cir. 2020).  To the following extent,

28

*United States District Court*
*Northern District of California*

1    defendants' motions for summary judgment are **GRANTED**, and plaintiff's motion for summary

2    judgment is **DENIED**.

3                                              **STATEMENT**

4         The facts are not in dispute.  In March 2018, plaintiff Isaac Wolf began employment at

5    the University of California's Lawrence Berkeley National Laboratory as a process engineer.

6    Defendant University Professional & Technical Employees, Communications Workers of

7    America Local 9119 ("UPTE") was the exclusive bargaining representative for his bargaining

8    unit.  California law did not require Wolf to join UPTE.  *See* Cal. Gov. Code § 3565.  Thus,

9    Wolf had the option of either becoming a due paying member of UPTE and enjoying the

10   privileges thereto, or not joining at all.  If he did not join, however, UPTE would have

11   nevertheless deducted "agency fees" — in an amount lesser than membership dues — from his

12   paycheck pursuant to then-existing state law.  *Id*. at § 3583.5(a).

13        Because UPTE would have exacted agency fees on Wolf if he did not become a member

14   and because he wanted to attend member-only meetings to opine on UPTE's policies in

15   collective bargaining negotiations with the University, Wolf made the decision to become a

16   dues paying member of UPTE.  On April 10, 2018, therefore, he signed a UPTE membership

17   agreement agreeing to the payment of dues on an annual renewing basis unless he sent notice

18   thirty-days prior to his annual renewal date.

19        Before Wolf signed UPTE's membership agreement, however, he attempted to cross out

20   the following language (Wolf Dep. 23:21–24:19):

21            If I resign or have resigned my union membership and the law no
             longer requires nonmembers to pay a fair share fee, I nevertheless
22           agree voluntarily to contribute my fair share by paying a service
             fee in an amount equal to dues.
23

24        But when UPTE rejected the deletions, he then signed an unaltered version of the

25   agreement, agreeing to be bound by all of the terms outlined in the agreement, including the

26   above provision and the annual cancellation window.  In the agreement, he authorized the

27   University to deduct and remit to UPTE membership dues and, in the event of resignation

28   outside the annual cancellation window, to the deduction of a "service fee in an amount equal

                                                    2

1

2

3

to dues."  Thereafter, both parties received the benefit of their bargain: Wolf attended UPTE meetings and voiced his opinion, and the University deducted union due amounts from Wolf's paycheck and remitted them to UPTE.

4

5

6

7

8

9

Then, on June 27, 2018, the Supreme Court held that public-sector unions' exaction of agency fees from non-union members' paychecks without a valid waiver violated those public-sector employees' First Amendment rights.  *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448 (2018).  UPTE thus immediately ceased collecting agency fees from nonmembers.  Thinking that *Janus* allowed him to renege on his contractual obligation to UPTE, plaintiff attempted to stop UPTE related deductions from his paycheck.

10

11

12

13

14

15

16

17

18

19

Specifically, in November 2018, a date prior to his annual cancellation window that ran from January 25 to February 24, 2019, Wolf sent a letter to UPTE wherein he resigned his membership and requested the immediate cessation of union dues from his paycheck.  Though UPTE accepted his resignation, citing the cancellation window outlined in the membership agreement, it refused his request to stop dues.  Accordingly, UPTE continued to certify to the University that it had proper authorization to request deductions.  The University, in turn, followed California law requiring it to rely on union certifications to it regarding whether or not to deduct membership dues.  *See* Cal. Gov. Code § 1157.12.  The University, therefore, continued to deduct Wolf's paycheck and remit the monies to UPTE until Wolf successfully stopped dues by cancelling during the cancellation window in February 2019.

20

21

22

23

24

25

26

Wolf then brought this suit seeking (1) a declaration "that deducting union dues after a government employee has requested that they stop is a violation of the First Amendment"; (2) a declaration that Section 3583 of California's Government Code "and all related provisions constitute an unconstitutional violation of Wolf's First Amendment rights"; and (3) monetary damages against UPTE pursuant to 42 U.S.C. § 1983 for "the amount of all dues" deducted from his paycheck since the commencement of his employment (Dkt. No. 39).  He subsequently left his employment with the University.

27

28

The parties cross-moved for summary judgment.  One day before the hearing on said motions, our court of appeals issued its opinion in *Belgau v. Inslee*, 975 F.3d 940 (9th Cir.

3

2020), stating that "*Janus* repudiated agency fees imposed on nonmembers, not union dues collected from members, and left intact 'labor-relations systems exactly as they are.' " *Id.* at 944 (quoting *Janus*, 138 S. Ct. at 2485 n.27).  Moreover, it held that Washington State's "ministerial processing of payroll deductions" from its employees' paychecks who had authorized those deductions by entering into private membership agreements with the union defendant there, did not give rise to state action under Section 1983.  In so holding, our court of appeals reasoned that though "Washington was required to enforce the membership agreement by state law, it had no say in shaping the terms of the agreement" — the source of the alleged harm.  *Id.* at 947–49.

At our hearing, Wolf's counsel conceded that *Belgau* was directly on point and foreclosed his Section 1983 claim.  Counsel, however, requested that the undersigned delay ruling on the parties' motions to see if a petition for rehearing en banc would be filed in *Belgau*, and, if so, whether that petition will be granted.  We all agreed to wait.

At the hearing, moreover, the parties disputed whether or not Wolf had properly pled a state law claim based on a theory of mutual mistake of law, which he had briefed in his summary judgment motion.  Accordingly, the undersigned ordered supplemental briefing (1) as to whether Wolf had adequately pled a state law claim based on mutual mistake, and if so, (2) whether the Court should retain jurisdiction over this claim.

The parties then filed their supplemental briefs (Dkt. Nos. 97–100).  Furthermore, a petition for rehearing en banc in *Belgau* was filed and has now been denied.  This order now follows.

## ANALYSIS

### 1.    WOLF'S FEDERAL CLAIMS.

*First*, Wolf's claims for declaratory relief are now moot because he is no longer a state employee, yet alone a UPTE member.  Thus, "the issues presented are no longer live" and Wolf "lacks a legally cognizable interest in the outcome." *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014).

1   *Second*, Wolf's Section 1983 claim for damages is foreclosed by the decision in *Belgau*.

2   Here, as in *Belgau*, "the source of the alleged constitutional harm is not a state statute or policy

3   but the particular private agreement between [UPTE] and [Wolf]."  975 F.3d at 947 (citation

4   and quotation omitted).  And, "the world did not change for [Wolf] . . . who affirmatively

5   signed up to be [a] union member[]."  *Id*. at 944.  Again, during oral argument, Wolf conceded

6   that *Belgau* was fatal to his claim.  In short, Wolf cannot show state action, a threshold

7   requirement under Section 1983.

8   Accordingly, defendants' motions for summary judgment as to these claims are thus

9   **GRANTED**, and Wolf's motion for summary judgment as to these claims are **DENIED**.

10      **2.      WOLF'S STATE LAW CLAIM?**

11   Despite acknowledging that his federal claims are now doomed, Wolf insists that this

12   action is not over yet.  He claims that he is still entitled to pursue a claim for damages against

13   UPTE based on a state law theory of mutual mistake of law.  Not so.  As Wolf concedes, his

14   complaint sought damages only under Section 1983 and made no mention of recovery of

15   damages based on a theory of mutual mistake (*see* Dkt. Nos. 39, 97 at 3).  Instead, Wolf argues

16   that it is enough that he raised this state law theory of relief for the first time in his summary

17   judgment motion.  This order disagrees.

18   For one thing, a claim for mistake is subject to the heightened pleading standard of Rule

19   9(b).  The purpose of the Rule 9(b) is to give a defendant fair notice of the allegations levied

20   against him so that can appropriately respond to it, including by performing relevant discovery.

21   *See Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).

22   Here, beyond Wolf's failure to explicitly plead a state law claim based on mutual

23   mistake, the factual allegations themselves are also deficient and even a liberal construction of

24   them cannot be construed as giving UPTE notice that Wolf would be pursuing such a claim.

25   Indeed, the complaint, not once, states the word 'mistake.'  The allegations in the complaint

26   that Wolf highlights in his supplemental brief relate to whether the membership agreement

27   constituted a voluntarily and knowing waiver of his First Amendment rights, not to whether the

28   agreement was the product of a mutual mistake of law (*see* Dkt. No. 39 at ¶¶ 14, 39–40).

United States District Court
Northern District of California

United States District Court
Northern District of California

1     Indeed, the language in these allegations (*e.g.*, that his "consent" was not "freely given")

2     mirror *Janus's* language regarding the standard for waiving one's First Amendment rights.  *See*

3     *Janus*, 138 S. Ct. at 2486 (holding that for waiver to be effective, it must be "freely given").

4          At best, the complaint could be construed as implying that plaintiff made a mistake about

5     the law — *i.e.*, about the constitutionality of agency fees.  But, there is simply no allegation

6     from which to construe that that mistake was mutual — that is, that UPTE shared the same

7     allegedly mistaken belief.  Thus, the complaint is wholly deficient in alleging a theory based

8     on mutual mistake, let alone with any degree of particularity required by Rule 9(b).

9          Wolf's out-of-circuit citations are not controlling and, in any event, are inapposite.  *See,*

10    *e.g.*, *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (holding that "separately numbered

11    allegations in the complaint" could be construed "as alternative theories" and that a specific

12    pleading/designation of "in the alternative" was not required).  Here, the issue is not the lack of

13    a specific designation in the complaint that Wolf is alleging a theory in the alternative; nor is it

14    disputed that the Federal Rules of Civil Procedure allow for both pleadings in the alternative

15    and for the pleading of separate claims, irrespective of consistency.  *See* Rule 8(a)(3); Rule

16    8(d)(2).

17         Rather, the problem is the lack of any allegation which could be construed as Wolf

18    raising a mutual mistake of law theory to relief.  Neither *Adler*, nor the other authorities Wolf

19    cites to stand for the proposition that a plaintiff can slink in a new claim at summary judgment.

20    Instead, more relevant authorities from this circuit counsel against it.  *See Coleman v. Quaker*

21    *Oats Co.*, 232 F.3d 1271, 1293–93 (9th Cir. 2000) ("the [plaintiffs] cannot turn around and

22    surprise the [defendant] at the summary judgment stage on the theory that an allegation of

23    disparate treatment in the complaint is sufficient to encompass a disparate impact theory of

24    liability."); *see also Pickern v. Pier 1 Imports (U.S.), Inc.*, 457 F.3d 963, 968 (9th Cir. 2006)

25    (holding the same in the context of the ADA).

26         Lastly, Wolf has failed to show he would even be entitled to pursue damages based on

27    mutual mistake of law.  The remedy provided by California law for mutual mistake of law is

28    rescission.  *See* Cal. Civ. Code §§ 1578, 1689.  Tellingly, no such relief is requested in the

1   complaint.  This deficiency further affirms that the complaint has not pled a claim based on

2   mutual mistake.

3        Ultimately, Wolf is bound by his complaint, which does not fairly contain a mutual

4   mistake of law claim.  The appropriate avenue would have been to seek leave to file an

5   amended complaint before the close of discovery and before summary judgment.  Slinking in a

6   new claim in his summary judgment motion cannot serve as a substitute to amending his

7   complaint.

8                                    **CONCLUSION**

9        For the foregoing reasons and the foregoing extent, Wolf's motion for summary

10  judgment is **DENIED** and the defendants' motions for summary judgment are **GRANTED**.  Final

11  judgment shall follow.

12       **IT IS SO ORDERED.**

13

14  Dated:  October 29, 2020.

15

16

17  WILLIAM ALSUP
    UNITED STATES DISTRICT JUDGE